# NATIONAL MUTUAL BUILDING AND LOAN ASSO-CIATION v. BRAHAN.

## ERROR TO THE SUPREME COURT OF THE STATE OF MISSISSIPPI.

### No. 158. Argued February 25, 26, 1904.—Decided April 4, 1904.

Where the plaintiff in error, defendant below, after filing a general issue moves to amend, claiming rights under the Fourteenth Amendment, and on the trial asks an instruction based on his rights thereunder, he is entitled to the instruction if the rights asserted actually exist, and the Federal question is raised in time, and the writ of error will not be dismissed.

The impairment of contract clause of the Federal Constitution cannot be invoked against what is merely a change of decision in the state court, but only by reason of a statute enacted subsequent to the alleged contract and which has been upheld or effect given it by the state court.

Where a corporation has become localized in a State and accepted the laws of the State as a condition for doing business there, it cannot abrogate those laws by attempting to make contract stipulations, and there is no violation of the full faith and credit clause in instructing the jury to find according to the local law and not according to the laws of another State, notwithstanding a clause in the contract that it should be construed according to the laws of the latter.

THIS action was brought in the Circuit Court of Louderdale County, Mississippi, to recover interest, claimed to have been usurious, paid by defendant in error to plaintiff in error upon a loan made by the latter to him. The action was brought under section 2348 of the Code of the State of 1892, which provides as follows:

"The legal rate of interest on all notes, accounts and contracts shall be six per centum; but contracts may be made, in writing, for the payment of a rate of interest as great as ten per centum per anuum. And if a greater rate of interest than ten per centum shall be stipulated for, or received in any case, all interest shall be forfeited, and may be recovered back, whether the contract be executed or executory; but this section shall not apply to a building and loan association domiciled in this State, dealing only with its members."

The case was tried to a jury, which, under the instructions of the court, returned a verdict for the defendant in error, upon which judgment was duly entered. The judgment was affirmed by the Supreme Court of the State. 80 Mississippi, 407. This writ of error was then sued out.

The plaintiff in error is a building and loan association, incorporated under chapter 122 of the Laws of the State of New York, passed April 10, 1851, entitled "An act for the incorporation of building, mutual loan and accumulating fund associations," and the acts amendatory thereof, to wit— chap. 564, passed June 9, 1875; chap. 96, passed April 1, 1878.

The purpose of the association is to make loans only to its members, and for the further purpose of accumulating a fund to be returned to its members who do not receive advances on their shares.

The management of the association is vested in a board of directors, who have power to make by-laws. There is a president and other officers and a standing committee. The latter passes on all applications for loans. Membership is obtained by holding five or more shares of the association and subscribing for membership. Shares are divided into three classes, instalment shares, paid-up shares and interest bearing paid-up shares. We are only directly concerned with the first class. They are described in the articles of the association as follows:

"SEC. 2. Instalment shares.—Instalment shares shall be issued in monthly series, and shall be dated the first business day of the month, and shall be due and become payable whenever the amount in the loan fund to the credit of such shares, consisting of monthly dues and profits apportioned to such shares, shall equal the face value of the shares."

It is provided, article 10, that dues on each instalment share shall be sixty cents per month until the maturity of the shares. There is also a provision for fines and forfeitures. The loan fund and loans are provided for as follows:

"SEC. 1. The loan fund of the association shall consist of

fifty cents of the monthly dues paid in on each share, interest, premiums, fines and forfeitures, and the profits derived therefrom, and shall be loaned to members of the association by the board of directors upon approved applications for loans in the order in which they have been filed.

"Sec. 2. Interest at the rate of not more than six per cent per annum will be charged upon all loans, which interest must be paid monthly, with the monthly dues, on or before the last business day of each month, until the maturity of the pledged shares, and a premium of not more than fifty cents per month will be charged on each one hundred dollars borrowed, which premium must be paid on or before the last business day of the month, for a period of eight years, or until the maturity of the pledged shares, should they mature before the expiration of the eight years. The premium for the first six months to be paid in advance.

"Sec. 3. A member may pay such loan at any time after one year, on giving thirty days' notice in writing to the secretary, upon the payment of the amount borrowed, with interest and premium thereon, and a redemption fee of fifty cents per share. No redemption fee shall be charged on matured shares."

It is also provided that loans on real estate shall be secured by a first mortgage on the property offered for security, by promissory notes, bonds, mortgages and deeds of trust of the applicant, or such other instruments as may be required, "and for every loan of $100 he shall, in addition thereto, transfer to the association at least one share thereof as collateral security."

In 1892 the plaintiff in error had an agent in the city of Meridian, Mississippi, who was authorized to receive applications for stock and loans, and to receive payment of dues, interest and premiums, and to transmit the applications and payments to plaintiff in error at its office in New York. The domicil of the plaintiff in error was and is New York. The defendant in error in 1892 was a citizen of the city of Meridian, and made application through the agent of plaintiff in error

at Meridian for a loan of $2,500, and to subscribe for twenty-five shares of stock, as required by articles of plaintiff in error. The loan was granted by the executive committee under the terms and according to the conditions of the articles of association. Defendant in error made the following payments "as dues, interest, premium and fines on said stock and loan, to wit: Advance premium sent the association at New York, $66.25; paid defendant's agent at Meridian, as shown by the receipt book hereto attached, $668.75, and $2,500 paid the association in New York by draft sent them on November 7, 1893, in full payment of said loan on May 21, 1892."

Defendant in error repaid this loan, but retained his twenty-five shares of stock, and paid his dues thereon for the months of December, 1893, to August, 1894, exclusive, amounting to the sum of $135.

In October, 1894, he withdrew five shares and received from plaintiff in error $73.90, the withdrawal value thereof.

In June, 1894, he made an application for another loan on his twenty shares, which was forwarded to plaintiff in error in New York by C. F. Woods, its agent. The loan was granted by the executive committee, and in consideration of the loan he executed to plaintiff in error a bond, assignment of shares and mortgage of real estate.

The loan was repaid by crediting thereon the sum of $649.70, the withdrawal value of his shares, payment by draft on New York of the sum of $1,473.96; interest, dues, fines and premiums, $868. Part of the latter was paid through the agent and part was sent directly to plaintiff in error.

The bond and mortgage given by defendant in error to secure the loan recited that they were given in consideration of such loan, and expressed as one of their conditions that defendant in error would repay the sum loaned to plaintiff in error "at its office in New York city, with interest for the same at the rate of six per cent per annum until paid, together with a monthly premium of ten dollars and no cents for eight years, or until the earlier maturity of said shares, should they mature

before the expiration of the eight years, and in addition thereto the sum of twelve dollars and no cents for the monthly dues on the said twenty shares, which interest, premium and dues are payable monthly on or before the last business day of every month, at the office of the association in New York city, until the maturity of the said shares, except the said monthly premium, which is to be paid for eight years only, and also all fines which may be imposed by the said association for default in payment of said interest, premium or dues."

To the declaration of defendant in error, plaintiff in error filed the general issue, with notice thereunder that plaintiff in error would give in evidence and prove the facts substantially as above stated. Subsequently, April, 1901, and August, 1901, plaintiff in error made motions for leave to amend its notice under the general issue. The amendments claimed rights under the Fourteenth Amendment of the Constitution of the United States, also under section 10 of article 1 of that instrument, and under section 1, article 4.

Defendant in error moved to strike out the amendments on the ground that they were filed without leave of the court. The motion was granted.

Testimony was introduced and at its conclusion defendant in error asked the court to direct the jury to find for him the excess paid over six per cent on both loans. The instruction was refused. The court, on the contrary, instructed the jury, at the request of plaintiff in error, that the first loan was not usurious. But the court charged the jury that the second loan was usurious, and directed them to find for defendant in error the sum paid by him in excess of six per cent on the loan ($2,000), with interest at six per cent per annum from July, 1899, to date of trial.

Plaintiff in error asked the court to instruct the jury substantially as follows:

1. Defendant in error, as a borrowing shareholder, was entitled to and did share in the profits of the association, and the contract was, therefore, valid and not usurious.

2. The contracts were made and consummated in New York and performable there, and are to be construed by the laws of New York, and under those laws the contract is valid and not usurious.

3. Under the Fourteenth Amendment of the Constitution of the United States, defendant in error had a right to become a member and shareholder of the association, to be a borrower from it upon the terms and conditions of its articles, and make contracts with it performable in the State of New York, and reciprocally defendant in error had the right to make the loan, and entitled under said amendments to have the "contracts considered and their validity determined by the laws of the State of New York," where they were performable; and under section 1, article 4, of the Constitution of the United States, was entitled to have the court give full faith and credit in determining the validity of the contracts with defendant in error, to the public records and judicial proceedings of the State of New York, especially the laws under which the defendant in error was incorporated, and the acts amending the same, and the decision in the case of *Concordia Association* v. *Read*, 93 N. Y. 474, and other decisions, which hold that the contracts are valid and not usurious under the laws of New York.

4. The contract is not usurious under the laws of Mississippi.

5. Section 2348 of the Annotated Code of Mississippi, as sought to be applied, impairs the obligation of the said contracts in violation of section 10, article 1, of the Constitution of the United States.

6. The decision of the Supreme Court of Mississippi in *Sokoloski* v. *New South B. and L. Association*, 77 Mississippi, 155, and the decisions following it having been rendered long after the making of said contracts, in so far as they define the public policy of Mississippi in regard to foreign building and loan associations, are tantamount to judicial legislation, and in violation of section 10, article 1, of the Constitution of the United States.

7. The evidence shows that both loans have been voluntarily paid and settled by defendant in error with full knowledge of all the facts.

8. As to the loan of 1894 the evidence shows that defendant in error, being a shareholder in the association, had a right to demand and receive advances or loans upon his shares upon the terms and conditions set out in the articles of the association, and the association was obliged to grant the same, and the said contract was made in pursuance of said right and application, and that the code of Mississippi does not govern said contract, and is as to said contract "both *ex post facto*, and impairing the obligation of said contract and in violation of sec. 10, art. 1, of the Constitution of the United States; and under sec. 1, art. 4, of said constitution and the laws of New York and the Fourteenth Amendment to said Constitution the said contract of August 30, 1894, is valid and enforcible and not usurious."

The instruction was refused, and plaintiff in error excepted. The jury found for defendant in error for the sum of $677.96, being amount paid in excess of the loan, and for the sum of $93.79 interest. Judgment was entered upon the verdict. It was affirmed by the Supreme Court of the State, as we have said.

*Mr. J. S. Sexton* and *Mr. A. S. Bozeman,* with whom *Mr. M. Green* and *Mr. G. M. Thompson* were on the brief, for plaintiff in error:

Constitutional rights cannot be stricken down by arbitrarily striking out pleadings seeking to present such questions. *Kipley* v. *Illinois &c.,* 170 U. S. 182. See also *Akin* v. *Kipley,* 176 Illinois, 638.

It is not at all necessary that the Federal questions presented in this case should have been made to appear on the record in direct and unequivocal terms, *in ipsissimis verbis,* but it is altogether sufficient that they should have appeared as they did by clear and necessary intendment. *Crowell* v. *Randell,* 10 Pet. 368; *Murray* v. *Charleston,* 8 Wall. 44. And

see also 16 Pet. 281; 125 U. S. 345; *Saywadr* v. *Denny*, 158 U. S. 180; *Oxley Stave Co.* v. *Butler County*, 166 U. S. 648; *Eastern B. & L. Assn.* v. *Williamson*, 189 U. S. 122; *Arrowsmith* v. *Harmoning*, 118 U. S. 194. See also Foster's Federal Practice, 2d ed. § 477; Curtis's Jurisdiction of U. S. Courts, 37, and cases cited in 112 U. S. 123, 129; 119 U. S. 110, 116; 139 U. S. 293, 295; *Des Moines Nav. & R. R. Co.* v. *Homestead Co.*, 123 U. S. 552.

The judgment of the state court cannot be maintained independently of the Federal question and this takes the case out of *Hopkins* v. *McLure*, 133 U. S. 380; *Bacon* v. *Texas*, 163 U. S. 207; *Beatty* v. *Fenton*, 135 U. S. 244. See *Chapman* v. *Goodnow*, 123 U. S. 540, 548; *Roby* v. *Coleheur*, 146 U. S. 153.

The Federal questions raised in the court below, involve a proper construction of the contract obligation of the parties as fixed by the articles of association of the plaintiff in error and the statutes and decisions of the State of New York, together with the statutes and decisions of the State of Mississippi as sought to be applied to the case in hand. The contract and articles of association, and the provisions of ch. 122, 1851, and ch. 564, 1875, of the laws of New York, are the only measure of the rights and obligations of the parties hereto. This is as true when this contract is to be construed by the courts of Mississippi, as if the New York courts were called upon to construe the same contract. 3 Thompson on Corp. § 3046; § 939, Ann. Code, Mississippi, 1902; *Eastern B. & L. Assn.* v. *Williamson*, 189 U. S. 122.

Defendant in error could not borrow money of plaintiff in error under the laws of New York and settle for the same under the laws of Mississippi enacted or announced subsequent to the time when the relations of the parties became fixed. *Bedford* v. *Eastern B. & L. Assn.*, 181 U. S. 227.

As to effect of judicial decisions as impairing the obligation of contracts, see *Pine Grove Township* v. *Talcott*, 19 Wall. 666; Black's Constitutional Law, 2d ed. 605; 15 Am. & Eng. Ency. 2d ed. 1046. As to what the law of the State was, see *Nat.*

*B. & L. Assn.* v. *Wilson*, 78 Mississippi, 993; *Shannon* v. *Georgia State B. & L. Assn.*, 78 Mississippi, 955; *Sokoloski* v. *Crofton*, 77 Mississippi, 155, 166; *Sullivan* v. *B. & L. Assn.*, 70 Mississippi, 99; *Goodman* v. *Loan Assn.*, 71 Mississippi, 234, 325; Thornton & Blackledge on B. & L. Assns. § 248; Thompson, 2d ed. 192; *Manship* v. *N. S. B. & L. Assn.*, 110 Fed. Rep. 845.

The Supreme Court of Mississippi, by its decision, deprived the appellant association of its "liberty" and "property without due process of law," and also denied it "the equal protection of the laws," contrary to the provisions of the Fourteenth Amendment which operate upon all agencies by which state law is made and enforced, all departments of state government, legislative, executive, *judicial*, and all subordinate agencies.  Brannon on Fourteenth Amendment, 111, 315, 319; *Chattanooga B. & L. Assn.* v. *Denson*, 189 U. S. 408, distinguished.

*Mr. Edward Mayes*, with whom *Mr. R. C. Beckett* was on the brief, for defendant in error:

The Federal question was not properly raised below. *Chapin* v. *Fye*, 179 U. S. 127; *Johnson* v. *New York Life*, 187 U. S. 491; *Railroad Co.* v. *Adams*, 180 U. S. 1; *Kipley* v. *Illinois*, 170 U. S. 182; *Railroad Co.* v. *Purdy*, 185 U. S. 148; *Laten* v. *Missouri*, 187 U. S. 356.

The language of the assignments is a complaint of the rendition of the judgment, and not of the enforcement of a subsequent statute.  That impairment of contract provisions apply to statutes only and not to judgments is settled law. *New Orleans, etc., Co.* v. *Louisiana, etc., Co.*, 125 U. S. 18; *Railroad Co.* v. *Plainview*, 143 U. S. 371; *Bacon* v. *Texas*, 163 U. S. 207; *Railroad Co.* v. *Adams*, 180 U. S. 41; *New Orleans Co.* v. *Louisiana Co.*, 185 U. S. 336.

Full faith and credit is not denied where a statute of another State is merely construed and its validity not questioned. *Finney* v. *Guy*, 189 U. S. 335; *Andrews* v. *Andrews*, 188 U. S. 14; *Johnson* v. *N. Y. Life Ins. Co.*, 187 U. S. 491;

*Eastern B. & L. Assn.* v. *Williamson,* 189 U. S. 124, 127. Impairing a contract is only by subsequent laws and not by erroneous decisions of the courts. *Weber* v. *Rogan,* 188 U. S. 10. See also 159 U. S. 103; 163 U. S. 278; 172 U. S. 116, 127.

The rule is the same as it is in regard to *ex post facto* laws. There must be a retrospective statute. The judgment of the court must apply a criminal or a penal statute subsequently enacted to a transaction innocent when done. *Kring* v. *Missouri,* 107 U. S. 221; *Pierce* v. *Carskadon,* 16 Wall. 234; *Burgess* v. *Salmon,* 97 U. S. 385; *Dent* v. *West Virginia,* 129 U. S. 114.

This court will not undertake to review the decision of the state court, because so to do would be to review adjudications made on pure questions of fact. This court will not review the decision of a state court on a bare question of fact, even although had that question been determined differently to what it was, and the judgment of the state court had then gone against the plaintiff in error, he would then have been entitled to his writ here. *Dower* v. *Richards,* 151 U. S. 658; *Egan* v. *Hart,* 165 U. S. 188; *Railroad Co.* v. *Chicago,* 166 U. S. 226; *Hendrick* v. *Railroad Co.,* 167 U. S. 673; *Turner* v. *State,* 168 U. S. 90; *Gardner* v. *Banestell,* 180 U. S. 362; *Western Union* v. *McCall Pub. Co.,* 181 U. S. 92; *Bement* v. *Harrow Co.,* 186 U. S. 70; *Thayer* v. *Spratt,* 189 U. S. 346; *Building & Loan Assn.* v. *Ebaugh,* 185 U. S. 114.

The question put in issue by plaintiff in error and determined against it was whether the contract was in fact made in New York or in Mississippi and this court is bound by the decision of the state court. See *Hooper* v. *California,* 155 U. S. 648; *Noble* v. *Mitchell,* 164 U. S. 370; *Oil Co.* v. *Texas,* 177 U. S. 46.

Since 1822 the statutes of Mississippi have prohibited the contracting for more than ten per cent per annum interest. Hutchinson's Mississippi Code, p. 641; Code of 1857, p. 370; Code of 1871, sec. 2279; Code of 1880, sec. 1141; Code, 1892, sec. 2348.

Since 1847 it has been the settled law in Mississippi by judicial

declaration of the effect of those statutes, that even after usurious interest has been paid the excess over six per cent could be recovered by action at law. *Bond* v. *Jones,* 8 S. & M. 368; *Dickerson* v. *Thomas,* 67 Mississippi, 777.

Chapter XIII, Laws, 1886, p. 35, was not amendatory of §1042 of the Code of 1880, and § 849 of the Code of 1892, but a repealing act as decided in *B. & L. Assn.* v. *Pinkston,* 79 Mississippi, 468, which construction is conclusive here. *Tullis* v. *Railroad Co.,* 175 U. S. 348; *Cargill* v. *Railroad Co.,* 180 U. S. 452.

Where a person or corporation comes into a State and establishes an agency and lends out the money of his principal and fixes the papers and collects the payments it is such a doing of business and so localizes it that it is subject to the taxing laws of the State. *New Orleans* v. *Stemple,* 175 U. S. 309; *Bristol* v. *Washington County,* 177 U. S. 133; *State Board &c.* v. *Comptoir Nat. d'Escompte,* 191 U. S. 388. See also 60 Fed. Rep. 31; 169 U. S. 421; 88 Fed. Rep. 578; 96 Fed. Rep. 578.

If acts subject the business to taxation they should also subject it to the usury laws and other laws and the public policy of the State.

This court will not review a decision of a state Supreme Court which holds a contract void as contrary to public policy. It is immaterial that such public policy is declared in a statute, if the statute antedates the contract. *Parker* v. *Moore,* 115 Fed. Rep. 799; *Farrer* v. *Keach,* 15 Wall. 67; *Rockhold* v. *Rockhold,* 92 U. S. 130; *New York Life* v. *Hendren,* 92 U. S. 287; *Bank* v. *McVeigh,* 98 U. S. 333; *Dugger* v. *Bocock,* 104 U. S. 601; *Sam Francis* v. *Scott,* 111 U. S. 769; *Railroad Co.* v. *Ferry Co.,* 119 U. S. 624; *New Orleans Co.* v. *Louisiana Co.,* 125 U. S. 34.

The decision appealed from is in itself correct. *Sokoloski* v. *Association,* 77 Mississippi, 155; *Crofton* v. *Association,* 77 Mississippi, 166; *Association* v. *Shannon,* 78 Mississippi, 955; *Association* v. *Wilson,* 78 Mississippi, 993; *Association* v. *Tony,* 78 Mississippi, 916; *Association* v. *Pinkston,* 79 Mississippi, 468; *Association* v. *Brahan,* 80 Mississippi, 407; *Association* v. *Shannon,* 80 Mississippi, 643; *Association* v. *Farnham,* 81 Mississippi,

365; *Bedford* v. *Eastern B. & L. Assn.*, 181 U. S. 237. This court declared that nothing but the fact that the law of the place where the debtor is, will make him pay, gives a debt validity. *Blackstone* v. *Miller*, 188 U. S. 189; *Association* v. *Parish*, 96 N. W. Rep. (Neb.) 243; *Skinner* v. *Association*, 35 So. Rep. (Fla.) 67.

MR. JUSTICE McKENNA, after stating the case, delivered the opinion of the court.

It is objected that the Federal questions presented cannot be considered "because they were not raised in time and the proper way," and that the Supreme Court did nothing more than decline to pass on the questions because they had not been raised in the trial court, as required by the state practice.

The Supreme Court considered that plaintiff in error, by the motions to amend the notice, attempted to "inject" a Federal question into the record, and that the instruction asked by the plaintiff in error had the same purpose. The court said: "It was another ingenious but unsuccessful effort to inject the Federal question into the record. If the court had allowed the amended notice and pleas to be filed, which presented nothing on the merits, but simply the alleged Federal question, then there would have been an issue involving the Federal question, to which an instruction would have been appropriate."

Upon the ruling of the court upon the amendments to the notice we are not called upon to express an opinion, but, we think, it is very clear that plaintiff in error was entitled to claim rights under the Constitution of the United States based upon the case as presented. And if the rights asserted actually existed plaintiff in error was entitled to an instruction directing a verdict in its favor. The claim was, therefore, made in time. *Green Bay & M. Canal Co.* v. *Patten Paper Co.*, 172 U. S. 58; *Rothschild* v. *Knight*, 184 U. S. 334; *Meyer* v. *Richmond*, 172 U. S. 82; *Mallett* v. *North Carolina*, 181 U. S. 589; *Dewey* v. *Des Moines*, 173 U. S. 193. It was also sufficient in form.

The Federal questions presented by the record are reducible to two, to wit: (1) That the decision of the Supreme Court of Mississippi was in effect an impairment of the contract between plaintiff in error and defendant in error.   (2) That full faith and credit were not given to the public acts, records and judicial proceedings of the State of New York.

1. This contention is untenable.   We said in *Bacon* v. *Texas,* 163 U. S. 207:

"Where the Federal question upon which the jurisdiction of this court is based grows out of an alleged impairment of the obligation of a contract, it is now definitely settled that the contract can only be impaired within the meaning of this clause in the Constitution, so as to give this court jurisdiction on a writ of error to a state court, by some subsequent statute of the State which has been upheld or effect given it by the state court.   *Lehigh Water Co.* v. *Easton,* 121 U. S. 388; *New Orleans Water Works Co.* v. *Louisiana Sugar Refining Co.,* 125 U. S. 18; *Central Land Co.* v. *Laidley,* 159 U. S. 103, 109."

In the case at bar there was no subsequent statute.   There was a change in decision, it is contended, but against a change of decision merely section 10, article 1, cannot be invoked.

2. If the contract between plaintiff in error and defendant in error cannot be regarded as controlled by the law of New York, there is no foundation for the contention that full faith and credit were not given to the public acts and records of New York.

A similar question was presented in the case of *New York Life Insurance Company* v. *Cravens,* 178 U. S. 389.   The plaintiff in error in that case was a New York corporation, having its principal place of business in the State of New York. It maintained agents and examiners in the State of Missouri. One of these agents solicited Cravens, at his residence in Missouri, to insure his life in the company.   Cravens assented, and made a written application for the policy sued on.   The application was made part of the policy and contained the following provisions:

"That inasmuch as only the officers of the home office of the said company in the city of New York have authority to determine whether or not a policy shall issue on any application, and as they act on the written statements and representations referred to, no statements, representations, promises or information made or given by or to the person soliciting or taking this application for a policy, or by or to any other person, shall be binding on said company, or in any manner affect its rights, unless such statements, representations, promises or information be reduced to writing and presented to the officers of said company, at the home office, in this application.

"That the contract contained in such policy and in this application shall be construed according to the laws of the State of New York, the place of said contract being agreed to be the home office of said company in the city of New York."

Four annual premiums were paid in Missouri. The fifth was not paid. Cravens died, and proof thereof was duly made. A controversy arose between the widow of Cravens and the company as to the amount due on the policy. Applying the law of New York, the company contended that there was due only the sum of $2,670 of paid-up insurance, and tendered that amount. The widow contended, applying the law of Missouri, for $10,000, less the amount of unpaid premiums, which left a balance of $8,749.21, with interest at six per cent from the date of the death of Cravens, and suit was brought for that amount. She recovered judgment according to her claim, and the case was brought here.

Describing the contentions of the company, we said that they were reducible to one form, to wit, that the statute of Missouri had been made by the Supreme Court of Missouri the measure of the rights and obligations of the parties against the agreement of the parties that the contract should be considered as having been made in New York, and should be construed and interpreted according to the laws of that State. The Supreme Court of Missouri decided that the statute expressed a condition upon which the company, as a foreign corporation,

was permitted to do business in the State, and also expressed the public policy of the State which parties could not by their contracts contravene. We accepted that interpretation of the statute and affirmed the judgment.

In the case at bar the Supreme Court of Mississippi gave the same effect to the statute of that State as the Supreme Court of Missouri gave to the Missouri statute. The court applied and followed the doctrine of *Shannon* v. *B. & L. Association,* 78 Mississippi, 955, expressed as follows:

"It must be remembered that the State has the power to prescribe the terms on which foreign corporations may do business. It is declared in § 849 of the Code of 1892, last clause, 'such foreign corporations shall not do or commit any act in this State contrary to the laws or policy thereof, and shall not be allowed to recover on any contract made in violation of law or public policy.' This is the plain mandate of our law, which must be rigidly enforced by the courts. And the code otherwise provides that (§ 2348) domestic building and loan associations are excluded from the operation of the usury laws, but foreign building and loan associations are subject to them, and to enforce this public policy, thus declared by the statute, is not to give extra-territorial operation to our statutes. On the contrary this corporation has come into the State, localized its business here, through local boards scattered all over the State, and must submit such business thus localized to the operation of the laws of the State. To hold otherwise would operate the grossest injustice to our citizens, and would virtually abrogate our statutes against usury."

And again, on p. 974: "Foreign corporations wishing to do business with our citizens, and localizing that business within our State through local boards, must comply with the laws of this State. They cannot, under such circumstances, enforce here stipulations in contracts allowed by the law of the State which created them, if these stipulations violate our laws or public policy. Such laws of such foreign States can have, *ex proprio vigore,* no extra-territorial effect, and it is not

competent for a foreign corporation whose business has been localized in this State, or the borrower, or both, to abrogate, by attempted contract, stipulations whose purpose it is to evade our laws against usury, the laws of this State on that subject.

"This holding in no way interferes with the right of a foreign corporation whose business has not been localized here to make contracts with borrowers, to be governed by the laws of the State of their domicile, if there be no purpose therein to evade the usury laws of this State. Such liberty of contracting, exercised in good faith, is not herein interfered with. The authorities cited to that point by counsel for appellee are not pertinent to cases like the one before us. All the cases are admirably collected in a note to *Bank of Newport* v. *Cook*, 46 Am. St. Rep. 171. In that note the learned editor points out, on page 202, the distinction to be observed saying: 'The proper answer to this argument is, that mere shams and evasions are not permitted to counteract and annul the law, and where it appears that the purpose of the parties in making the obligation payable in another State was to evade the laws against usury of the State in which it was executed, it will be regarded as infected with usury.'"

These remarks bring the case at bar within the ruling of *N. Y. Life Insurance Co.* v. *Cravens, supra.* The decision of the Supreme Court is, that plaintiff in error had become "localized" in the State, had accepted the laws of the State as a condition of doing business there, and could not, nor could defendant in error, "abrogate by attempted contract stipulations" those laws. See *Hancock Mutual Life Ins. Co.* v. *Warren*, 181 U. S. 73.

In *Chattanooga Building &c. Association* v. *Denson*, 189 U. S. 408, we recognized the right of a State to impose conditions upon foreign corporations doing business in the State to the extent of holding the contracts of the corporation void which were entered into in violation of the conditions.

There is nothing inconsistent with these views in *Bedford*

v. *Eastern B. & L. Association,* 181 U. S. 227.  In that case there was a consummated contract, and we held invalid a law enacted subsequently that made the enforcement of the·contract depend upon the performance of onerous conditions. There was a question of usury in the case, but Tennessee, under the statute of which State usury was claimed, did not prohibit contracts which made the laws of another State applicable thereto.  In that case, therefore, the law of the contract stipulated by the parties could be applied.

*Judgment affirmed.*

MR. JUSTICE WHITE took no part in the decision of this case.