HELENA ESAU, APPELLEE, V. SMITH BROTHERS, INC.,
APPELLANT.

FILED JANUARY 6, 1933.   No. 28623.

(217)

*Brome, Thomas & McGuire* and *G. H. Seig,* for appellant.

*Hubka & Hubka, contra.*

Heard before GOSS, C. J., DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

GOSS, C. J.

This is a proceeding under the Nebraska workmen's compensation law, brought by a mother, claiming to be a dependent, on account of the fatal injury and death of her son.

Most of the vital facts, so far as they affect the employment and the injury to the employee, are admitted by the pleadings and by a stipulation of facts. Defendant is a Texas corporation, with its principal place of business in Dallas. During October and November, 1930, it was executing a contract for the laying of a natural gas pipe line and connections in a northeasterly direction from Haddam, Kansas, through Nebraska and into Iowa. At Haddam, on October 16, 1930, it employed William P. Esau, about 27 years of age, unmarried son of plaintiff, as a laborer. He continued uninterruptedly in such employment until November 1, 1930, when he was fatally injured near Beatrice, in Gage county, Nebraska. The injury arose out of and in the course of his employment. When the contract of employment was entered into, no mention was made by either of the parties of any workmen's compensation law; the employer had elected to

abide by, had complied with, and was working under, the Kansas workmen's compensation law, a printed copy of which was stipulated in evidence. It contains a provision that "this act shall apply also to injuries sustained outside the state where the contract of employment was made within the state, unless such contract otherwise specifically provides." Laws (Kan.) 1927, ch. 232, sec. 6. William P. Esau at no time elected to come within the provisions of said law. This paragraph states substantially all facts admitted by pleading and by stipulation.

The evidence further shows that when William P. Esau began work for defendant, its camp was at Haddam, Kansas, but about a week before his injury the main camp had been moved from Haddam to Steele City, Nebraska, which then became and was at the time of the injury the temporary headquarters of defendant as its work progressed in a northeasterly direction, though the work in Kansas was not yet completed. While the employee was subject to be sent back into Kansas to aid in finishing work there, it does not appear that he ever worked on his job aiding the welders anywhere except in Nebraska, after the headquarters was moved to Nebraska. His wages were $4 a day and he worked seven days each week. Both he and his mother, the plaintiff, were residents of Nebraska.

Defendant alleged, and has contended throughout the proceedings, that Nebraska has no jurisdiction under its compensation law and that plaintiff's rights, if any, must be determined under the Kansas law. The Nebraska compensation commissioner allowed plaintiff $15 each week for 350 weeks as sole dependent. On appeal the district court cut this to $3.85 a week, finding that plaintiff's son contributed only about $200 each year to her support as a partial dependent. The employer appealed, arguing that the Kansas compensation law contains plaintiff's exclusive remedy.

The appellant relies upon the recent case of *Bradford Electric Light Co. v. Clapper,* 286 U. S. 145, as presenting what it calls an identical situation. Both employer and em-

ployee were citizens and residents of Vermont. The employer company had its principal place of business in Vermont and lines extending into New Hampshire. Leon Clapper, employed by it as a lineman for emergency service in either state, was sent to restore some burned-out fuses at a substation in New Hampshire and while doing so was killed. Sued in the federal court (on removal from the state court) in New Hampshire by a local administratrix of the deceased, the company set up as a special defense that the action was barred by provisions of the Vermont compensation act. Judgment for plaintiff was affirmed by the court of appeals but reversed by the United States supreme court on the ground, among others, that the failure to recognize the special defense, under the particular facts, constituted a violation of the full faith and credit clause of section 1, art. IV of the federal Constitution. But the very last sentence of the opinion is cautionary. The court said: "We have no occasion to consider whether if the injured employee had been a resident of New Hampshire, or had been continuously employed there, or had left dependents there, recovery might validly have been permitted under New Hampshire law." This phase of the opinion, delivered by Mr. Justice Brandeis, was amplified in the concurring opinion by Mr. Justice Stone. So the situations are not identical.

We believe no superior force of the full faith and credit clause of the federal Constitution will compel us to recognize a defense based upon the Kansas law, under the facts here, if in conflict with our interpretation of the Nebraska compensation law and in conflict with our public and domestic policy in relation thereto.

In *McGuire v. Phelan-Shirley Co.*, 111 Neb. 609, the employee, McGuire, lived in Nebraska, and the employer, Phelan-Shirley Company, had its principal place of business in Omaha. Under a contract of employment made in Nebraska, McGuire was injured in Iowa while assisting in handling a ditching machine in the execution of agreed work for the employer. It was held that the com-

pensation proceedings were maintainable in Nebraska. The decision was based on the intent of the statute and of the parties to the contract that the law of the place of contract should govern because both parties resided in Nebraska, the employer carried on its industry in Nebraska and the work in Iowa was but an incident to the industry in Nebraska. See *Watts v. Long,* 116 Neb. 656, 661. In the last named case it was held that the Nebraska law is not "applicable to a nonresident employer and resident employee, where the contract of employment was made in this state for services to be performed in another state, and the employer was not, at the time of the contract, engaged in any trade, business, profession, or avocation in this state." This was approved and followed in *Freeman v. Higgins,* 123 Neb. 73, although there the employer and employee both resided in Nebraska but the contract was made and the industry carried on in Wyoming; and the employer was not engaged in any industry in this state to which the services to be rendered were incidental. In *Stone v. Thomson Co., ante,* p. 181, plaintiff resided in Nebraska, the employer maintained its principal headquarters in Nebraska, the contract of employment was made in Nebraska, and the employee was sent to Kansas, where he was injured. It was held that the industry in Kansas was merely incidental to that here and that the action for compensation was maintainable here.

Thus it will be observed that our decisions put great emphasis upon the place where the industry was carried on, though taking into consideration the place of contract and the residence of the parties. Running through these and other cases is the theory that the industry should bear the burden of injury to employees under it.

The statute (Comp. St. 1929, sec. 48-106) says: "The provisions of this act shall apply to the state of Nebraska and every governmental agency created by it, and to every employer in this state employing one or more employees, in the regular trade, business, profession or vocation of such employer." The defendant's principal

place of business was in Texas, but its headquarters, which were in Kansas when it engaged the employee, had been moved to Nebraska, where it was carrying on its business of laying the pipe line when William P. Esau received his fatal injury. The defendant answers the call of the statute in that it was an "employer in this state employing one or more employees, in the regular trade, business, profession or vocation of such employer." While its domicile was Texas, its only headquarters shown in the evidence for the conduct of its industry was Nebraska, the industry was being carried on in Nebraska, the employee resided in Nebraska and was injured in Nebraska. We do not think it accords with our public policy to admit that the Kansas contract and compensation law deprive Nebraska of its jurisdiction under its compensation law. On the other hand, we are of the opinion, and declare it to be the settled public and domestic policy of this state, that, under the facts of this case, the action of the plaintiff is maintainable in Nebraska. We have not been cited a case, nor have we found one, resulting in refusal to take jurisdiction in the state where the injury, the residence of the injured employee, and the only headquarters of the industry in which he was employed when injured, coincided. These elements concurring, we do not regard the provision of the Kansas law, by which the employer seeks to hold the employee to the so-called exclusive remedy there afforded, as binding here.

Complaint is made that the court erred in finding the plaintiff a partial dependent of her injured son and as to the amount of the judgment. In addition to the facts first stated, the evidence shows that the plaintiff is in a dependent and necessitous state, that the son William had no other dependents, that when he was working and the mother needed it he contributed to her support, that he had not only manifested this in practice in previous years, but recently had orally manifested his intention to take care of his mother; and while his recent financial support had been less because he had been out of work,

yet the evidence, though informal and not very complete, fully justifies the finding of the district court as to the amount of his contributions. The act is highly remedial both in character and purpose. It should be liberally construed to attain the accomplishment of its beneficent objects. Technical refinements of interpretation will not be permitted to defeat it. *Parson v. Murphy,* 101 Neb. 542; *McCrary v. Wolff,* 109 Neb. 796. We are of the opinion the district court did not err to the prejudice of the appellant in finding plaintiff a partial dependent of the injured employee and in fixing the compensation. The plaintiff is allowed an attorney's fee of $100 in this court, and the judgment of the district court is

AFFIRMED.