EDMONDS, J.
The petitioner by this proceeding for review, seeks to annul an award of compensation made by the Industrial Accident Commission upon the ground that at the time the employee was injured, he was subject to the workmen’s compensation law of Massachusetts. The defense of the insurer is that Massachusetts has exclusive jurisdiction of the controversy.
Dewey & Almy Chemical Company is a Massachusetts corporation, licensed to do business in California. Its principal offices are in Cambridge, Massachusetts, and one of its several factories is at Oakland, California. The business of the company is managed by its executive officers in Massachusetts and a research laboratory is maintained there.
Kenneth Tator, the injured employee, formerly lived in Portland, Oregon. He left there-to attend Massachusetts Institute of Technology, from which he graduated. Since January, 1930, he has been employed by the Dewey & Almy Company as chemical engineer and research chemist. The contract of employment (which is in writing but does not appear in the record) was made in Cambridge, and Mr. Tator has worked there in the company’s research laboratory except at various times when he has been sent elsewhere on company business.
In September, 1935, one of the principal customers of the company made a complaint about a chemical compound manufactured at the Oakland plant. Following a conference in New York between officers of the company and this customer, the company’s general manager ordered Mr. Tator, then at the laboratory in Cambridge, to go to Oakland and investigate the situtation. Mr. Tator did so, and suggested several changes in the machinery of the plant. The evidence shows that he made written reports from time to time concerning his work. These reports were addressed to the manager of *570 the Oakland plant, but copies were sent to the home office in Cambridge and Mr. Tator received comments and suggestions from his superiors there.
It is clear that throughout this time he was subject to the control and direction of the officers of the company at Cambridge, although his method of procedure was subject to the approval of the manager of the Oakland factory, who assigned him a place to work, named men to assist him, and had limited authority to accept or reject the suggestions he made regarding changes in equipment. However, these were matters of detail. Mr. Tator had been sent to Oakland to find out why the company’s product manufactured there did not meet requirements, and to remedy the difficulty. His status in California is defined very clearly by his own testimony. Speaking of the trouble at the Oakland plant, he said: “I was brought out there to solve the thing by my technical knowledge if I could. ... I was advising the Oakland branch from a technical standpoint. . . . When I had found the trouble and rectified it, I was to . . . notify Cambridge and await orders. . . . There was no thought of staying out here permanently. ’ ’.
While he was in California Mr. Tator remained on the payroll of the company in Massachusetts and his salary as it accrued was deposited to his account in a bank in Massachusetts. He was given an advance before he left Cambridge to meet his traveling and other expenses in California, and a further sum was advanced to him by the Oakland office. At the time of the hearing these expenses had been billed to the Oakland office and the local manager understood that a charge would later be made for Mr. Tutor's salary while he was in California.
At the time of Mr. Tutor’s injury, the Dewey & Almy Company carried workmen’s compensation insurance covering its operations in Massachusetts and also in California. The Hartford Accident and Indemnity Compan)'' insured it by a policy under which the obligations of the insurer include the workmen’s compensation law of Massachusetts (G. L. (Ter. Ed.) C. 152) “and none other”. This policy names Cambridge and Walpole, Massachusetts, as the location of all work places of the employer. A policy issued by the petitioner insured the chemical company against the obligations imposed by the California Workmen’s Compensation, Insurance and Safety Act of 1917 (Stats. 1917, p. 831, as amended) *571 and names the work places of the employer as the factory in Oakland “and elsewhere in the State of California”.
After being injured, Mr. Tator made an application to the Industrial Accident Commission of California for compensation, naming Dewey & Almy Chemical Company as his employer and the petitioner as the employer’s insurance carrier. The latter filed an answer denying the jurisdiction of the commission to determine the claim for the reason that he was an employee of Dewey & Almy Chemical Company in its operations in the state of Massachusetts and was not covered by the workmen’s compensation insurance policy of the petitioner. It is further alleged “that the applicant is a resident of the State of Massachusetts and entered his employment therein, and not having rejected the extraterritorial effect of the Workmen’s Compensation Act of the State of Massachusetts, thereby did elect, in the event of his injuries sustained by him outside the confines of the State of Massachusetts, to accept the benefits of said State, and such an agreement was a part of his contract to hire”.
Prior to the hearing the Hartford Company was joined as a defendant. The commission found that Mr. Tator sustained injury at Oakland, California, while employed as a chemical engineer “by the Pacific factory of the Dewey & Almy Chemical Company, a Massachusetts corporation”. It determined that this injury caused permanent disability which it rated at 4214 per cent of total, and awarded compensation therefore against the petitioner. It also found that the Hartford Accident & Indemnity Company was not the insurance carrier of the employer and dismissed it and the employer from all liability.
The workmen’s compensation law of Massachusetts provides:- “An employee of an insured person shall be held to have waived his right of action at common law or under the law of any* other jurisdiction in respect to an injury therein occurring, to recoverclamages for personal injuries if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right, ... If an employee who has not given notice of his claim of common law rights of action, under section twenty-four, or who has given such notice and has waived the same, receives a personal injury arising out of and in the course of his employment, or arising out of an ordinary risk of the street while actually engaged, with his employer’s authorization, in the business *572 affairs or undertakings of his employer, and whether within or without the commonwealth, he shall be paid compensation by the insurer, as hereinafter provided, if his employer is an insured person at the time of the injury; provided, that as to an injury occurring without the commonwealth he has not given notice of his claim of rights of action under the laws of the jurisdiction wherein such injury occurs or has given such notice and has waived it.” It is conceded that no notice was given by Mr. Tator pursuant to the provisions of this law, and the petitioner asserts that under such circumstances Massachusetts has exclusive jurisdiction to award compensation for the injury. -
In the leading case of Bradford Electric Light Co. v. Clapper, 286 U. S. 145 [52 Sup. Gt. 571, 76 L. Ed. 1026, 82 A. L. R. 696], an employee of a Vermont corporation was killed while working in New Hampshire. He resided in Vermont and had been employed in that state as a lineman for emergency service either there or in New Hampshire. The accident occurred when he was sent to the New Hampshire substation to make some repairs. The employer, invoking the full faith and credit clause, set up a special defense : It pleaded that the action was barred by the provisions of the workmen’s compensation act of Vermont which as in effect at the time of the accident, provides that a workman hired within the state shall be entitled to compensation for an injury received either within or without the state; that “employers who hire workmen within this state to work outside of the state, may agree with such workmen that the remedies under the provisions of this chapter shall be exclusive as regards injuries received outside this state by accident arising out of and in the course of such employment, and all contracts of hiring in this state shall be presumed to include such agreement”. The act also stipulates that every contract of employment made within the state shall be presumed to be subject to its provisions unless prior to the accident an express statement to the contrary shall have been made by one of the parties, and that acceptance of the act is “a surrender by the parties ... of their rights to any other method, form or amount of compensation or determination thereof”. Neither the employer nor the employee filed any statement declining to accept any provision of the Vermont act.
*573 In determining that the rights of the employer and the representative of the dead employee were fixed hy the law of Vermont and that the action in New Hampshire could not be maintained, the court said: “The administratrix contends that the full faith and credit clause is not .applicable. The argument is that to recognize the Vermont act "as a defense to the New Hampshire action would be to give to that statute an extra-territorial effect, whereas a state’s power to legislate is limited to its own territory. It is true that full faith and credit is enjoined by the Constitution only in respect to those public acts which are within the legislative jurisdiction of the enacting State. (See National Mutual Bldg. & Loan Assn. v. Brahan, 193 U. S. 635, 647 [24 Sup. Ct. 532, 48 L. Ed. 823]; Olmsted v. Olmsted, 216 U. S. 386, 395 [30 Sup. Ct. 292, 54 L. Ed. 530, 25 L. R A. (N. S.) 1292].) But, obviously, the power of Vermont to effect legal consequences by legislation is not limited strictly to occurrences within its boundaries. It has power through its own tribunals to grant compensation to local employees, locally employed, for injuries received outside its borders, compare Quong Ham Wah Co. v. Industrial Acc. Com., 255 U. S. 445 [41 Sup. Ct. 373, 65 L. Ed. 723], dismissing writ of error, 184 Cal. 26 [192 Pac. 1021, 12 A. L. R 1190], and likewise has power to exclude from its own courts proceedings for any other form of relief for such injuries. . . . The answer is that such recognition in New Hampshire of the rights created by the Vermont Act, can not, in any proper sense, be termed an extra-territorial application of that Act. . . . The relation between Leon Clapper and the Company was created by the law of Vermont; and as long as that relation persisted its incidents were properly subject to regulation there. For both Clapper and the Company were at all times residents of Vermont; the Company’s principal place of business was located there; the contract of employment was made there; and the employee's duties required him to go into New Hampshire only for temporary and specific purposes, in response to orders given him at the Vermont office. The mere recognition by the courts of one State that parties by their conduct have subjected themselves to certain obligations arising under the law of another State is not to be deemed an extra-territorial application of the law of the State creating the obligation. Compare Canada Southern Ry. Co. v. Gebhard, 109 U. S. 527, 537 [3 Sup. Ct. 363, 27 L. Ed. 1020], ... By *574 requiring that, under the circumstances here presented, full faith and credit be given to the public act of Vermont, the Federal Constitution prevents the employee or his representative from asserting in New Hampshire rights which would be denied him in the State of his residence and employment. . . . The interest of New Hampshire was only casual. Leon Clapper was not a resident there. He was not continuously employed there. So far as appears, he had no dependent there. It is difficult to see how the State’s interest would be subserved, under such circumstances, by burdening its courts with this litigation.”
In the later case of Ohio v. Chattanooga Boiler & Tank Co., 289 U. S. 439 [53 Sup. Ct. 663, 77 L. Ed. 1307], the employer was a Tennessee corporation and the dead employee had been a resident of that state and had been hired there. The accident for which compensation was claimed occurred in Ohio. That state, after paying an award of compensation from its insurance fund, brought an original action against the employer to recover the amount of its payment. In defense, the employer relied upon a provision of the Tennessee workmen’s compensation law that “the rights and remedies herein granted to an employee subject to this Act on account of personal injury or death by accident shall exclude other rights and remedies of such employee, his personal representative, dependents or next of kin, at common law or otherwise, on account of such injury or death”. However, in giving judgment for Ohio, the Supreme Court pointed out that this statute, as construed and applied by the highest court of Tennessee, did not preclude recovery under the law of another state “and the full faith and credit clause does not require that greater effect be given the Tennessee statute elsewhere than is given in the courts of that State”.
The principles stated in the Clapper case were followed and applied in Cole v. Industrial Com., 353 Ill. 415 [187 N. E. 520, 90 A. L. R 116]. There the employee, who was injured while at work in Illinois, was a resident of Indiana and was hired there by contractors who resided and had their principal place of business in that state. The Indiana law provided that the rights and remedies “granted to an employee subject to this act on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representatives, dependents or next of kin, at common law or otherwise, on account of such injury *575 or death”. The court held that as the contract of employment was made in the state of Indiana between parties who were subject to the terms of the workmen’s compensation law of that state, the remedy provided by it was an exclusive one.
The more recent case of Alaska Packers Assn. v. Industrial Acc. Com., 294 U. S. 532 [55 Sup. Ct. 518, 79 L. Ed. 1044], presents another application of the full faith and credit clause. In that case an employee who had been hired in California for seasonal work in Alaska recovered compensation under the California law, in spite of a contract made by him in which he elected to be bound by the law of Alaska. This award was affirmed. At the time of the injury, which occurred in Alaska, the California law provided: “The [industrial accident] commission shall have jurisdiction over all controversies arising out of injuries suffered without the territorial limits of this state in those cases where the injured employee is a resident of this state at the time of the injury and the contract of hire was made in this State, ...” This statute, the court said, came in conflict with the statute of Alaska, and such a conflict is to be resolved “not by giving automatic effect to the full faith and credit clause, compelling the courts of each state to subordinate its own statutes to those of the other, but by appraising the governmental interests of each jurisdiction, and turning the scale of decision according to their weight”.
The case of De Gray v. Miller Bros. Const. Co., 106 Vt. 259 [173 Atl. 556], also recognizes the public policy of the forum as' controlling. The court said that when a person employed in another state is injured in Vermont, its courts, either upon the principles of comity or under the full faith and credit clause, usually will decline to take jurisdiction if the contract of employment does not conflict with the law and public policy of Vermont. But it was held in Esau v. Smith Bros., 124 Neb. 217 [246 N. W. 230], that the full faith and credit clause must yield to the public and domestic policy of the state which is asked to enforce the constitutional provision.
In considering the application of these and other cases to the right of Mr. Tator to recover compensation in California, it is important to note that the Supreme Court of Massachusetts has decided that in the administration of the workmen’s compensation law, the Industrial Accident Commission and the courts of that state are not bound by the acts of any other jurisdiction and that a proceeding brought in another state *576 by a.n employee hired in Massachusetts “has no standing- in law”. (Migues’ Case, 281 Mass. 373 [183 N. B. 847]; Mc-Laughlin's Case, 274 Mass. 217 [174 N. E. 338].) In each of these cases an award made in Massachusetts in favor of an employee was sustained notwithstanding the fact that compensation had also been allowed in another state, although the employer was allowed credit for the amount previously awarded. In the Clapper case it was stated that if the action for damages in New Hampshire could be maintained, the plaintiff might get a recovery which would be denied him by the law of Vermont; this also has some bearing upon Mr. Tator’s application. Although the proceeding brought by him in California sought an award under the compensation law and is not an action for damages, the scale of compensation benefits is not the same in all states. If the employee may disregard the law of the state of his residence and employment and assert his rights in another jurisdiction, an employer may be required to pay compensation in an amount different from that for which he would be liable under the lex loci.
Upon the principles which have been stated and applied in these cases, Mr. Tator cannot recover compensation in California unless this state has a governmental interest in the controversy superior to that of Massachusetts. At the time of his injury, Mr. Tator was a resident of Massachusetts. He was employed there, and was subject to the direction of officers of the employer there located. His salary was paid to him in that state, and he had come to California only on a specific errand for his employer. Under these circumstances the interest of California, like that of New Hampshire in the Clapper case, supra, is only “casual” unless there are other facts upon which a governmental interest may be based. It is urged that this interest may be found in the medical and hospital expenses which were incurred in this state and had not been paid at the time of the hearing. ■
The modern view that the cost of industrial injuries is properly a part of the expense of production underlies all workmen’s compensation laws. (Western Ind. Co. v. Pillsbury, 170 Cal. 686 [151 Pac. 398].) The public has a direct interest in the results of industrial accidents. When the injured employee had only a right of action for damages, he too often became an object of charity. Even under present laws the public bears some part of the expense of such accidents *577 in addition to the amount which is added to the cost of manufacture. The public, therefore, is vitally concerned to see that adequate medical care is furnished to those injured. Indeed, the constitutional amendment adopted in 1918 which vested the legislature with plenary power to create and enforce a complete system of workmen’s compensation defines such a system as including “full provision for such medical, surgical, hospital and other remedial treatment as is requisite to cure and relieve from the effects of such injury”. (Art. XX, sec. 21.) The workmen’s compensation law uses this same language in prescribing the medical and hospital treatment which an employer must furnish. (Sec. 9a.) Even before these enactments this court recognized the important place medical care has in the administration of workmen’s compensation when it said: “Compensation means more than a mere cash payment to an individual. Compensation to employees for injuries incurred by them may fairly be said to mean not only a money payment to the employee himself, but provision or indemnification for the various elements of loss which may be the direct result of his injury. It includes, for example, the obligation to provide medical and surgical treatment (sec. 15, subd. a)—an obligation which does not necessarily involve payment in cash to the employee himself. ’ ’ (Western Metals Supply Go. v. Pillsbury, 172 Cal. 407 [156 Pac. 491, Ann. Cas. 1917E, 390].)
An award for medical expense cannot be made in favor of a physician in a proceeding to which the injured employee is not a party (Pacific Employers Ins. Co. v. French, 212 Cal. 139 [298 Pac. 23]), but a physician who has rendered medical aid to a compensable employee may maintain an application to recover the value of his services in a proceeding in which both the employer and employee are named as defendants. Such a physician is a party in interest because an effective administration of the workmen’s compensation act both assures and requires adequate medical care and treatment. This court has said: “As a practical matter, injured employees as a class will receive better and more willing medical service if remuneration for such services from an employer or insurance carrier is assured to doctors and hospitals than if instances may arise in which, if an employee neglects to file a claim for compensation, after the services have been rendered, such doctors and hospitals may be required to look *578 only to the injured employee for compensation. It should be borne in mind that the medical, surgical and hospital treatment which is intended to be assured to injured employees as one of the items of their compensation by the act, will be more certain to be furnished if doctors and hospitals are assured of certain remuneration for their services. ’ ’ (Independence Indem. Co. v. Industrial Acc. Com., 2 Cal. (2d) 397, 404 [41 Pac. (2d) 320].)
The public policy of California upon this question has been clearly and positively stated in the Constitution, the workmen’s compensation law which was enacted pursuant to it, and the decisions of this court. It would be obnoxious to that policy to deny persons who have been injured in this state the right to apply for compensation when to do so might require physicians and hospitals to go to another state to collect charges for medical care and treatment given to such persons. Under these circumstances the governmental policy of California weighs more heavily in the scale of decision than the law of Massachusetts and the conflict in laws must be resolved in favor of the state where the injury occurred.
The award is affirmed.
Shenk, J., Curtis, J., Seawell, J., Waste, C. J., and Langdon, J., concurred.
Houser, J., concurred in the judgment.
Rehearing denied.