## The People v. Levi Husband.

*Criminal law: Fraudulent conversion: Trunks: Checks: Delivery: Larceny.*
Under the statute (*1 Laws 1875, p. 195*), making one to whom money, goods, or other property the subject of larceny shall have been delivered, and who shall embezzle or fraudulently convert the same to his own use, etc., guilty of larceny, it is a sufficient delivery of trunks and baggage, where the checks for the same are delivered to respondent and he, acting under the authority which the delivery of such checks gave him, has assumed the right to and has exercised acts of possession and control over the trunks and baggage.

*Baggage checks: Hotel keeper: Lien: Fraudulent conversion.* The fact that a hotel keeper to whom checks for baggage have been delivered by a guest, would have a lien upon the baggage for the bill of such guest, would give him no authority to dispose of the property as his own, and would not justify his conversion of the same to his own use, or of itself preclude his being held under said statute, on the ground that he was a bailee with a special property in the goods.

*Fraudulent conversion: Hotel keeper: Baggage: Good faith.* And instructions to the jury that in case they found defendant claimed to have a lien upon the goods, and thought he had a right to pledge the goods by virtue of having such lien, then such claim of right, if made in good faith, would negative an intent to deprive the owner of her goods, are as favorable in this regard to the respondent as he is entitled to demand.

*Submitted on briefs April 10.   Decided April 18.*

Exceptions from Kent Circuit.

*Otto Kirchner, Attorney General,* for the People, cited: *2 East P. C., 555; Rex v. Williams, 1 C. & K., 195; Archb. Cr. Pr. & Pl. (notes), p. 361-2 (2).*

*Atwood & Corbitt,* for respondent, cited: *2 Bish. Crim. L., 829; and cases cited; Leake v. The State, 10 Humph., 479.*

MARSTON, J :

An information was filed against the respondent charging him with having fraudulently and feloniously secured and converted to his own use, certain trunks and other property of the value of fifty-five dollars, without the consent of the owner thereof, and that he thereby in manner and form aforesaid, feloniously did steal and carry away the same contrary to the statute, etc.

The statute under which the information was filed reads as follows:

"If any person to whom any money, goods, or other property which may be the subject of larceny, shall have been delivered, shall embezzle, or fraudulently convert to his own use, or shall secrete with intent to embezzle, or fraudulently use such goods, money, or other property, or any part thereof, he shall be deemed by so doing to have committed the crime of larceny."—*Act No. 168, Laws 1875, Vol. 1, p. 195.*

The evidence introduced tended to show that the respondent was a hotel keeper, and that as such he had received from the complaining witness, who was stopping at his house, three checks, being the checks to her trunks then at the depot, with a request that he bring the trunks to the house; that complainant remained at his house some five weeks; that although she ascertained that her trunks had been removed from the depot, the same had not been brought to the respondent's house; that respondent in the meantime had been to Detroit, and on his return she spoke to him about her trunks, when he informed her they had been sent to Detroit but he would have them back in a day or two.

Evidence was also given that on April 24th, 1876, some eight days after respondent had received the checks, he was in Detroit and that he then handed the checks to the proprietor of a hotel in that city who handed them to one of the hotel porters; that respondent then asked the porter to bring the baggage which the checks represented to the house, which was done; that respondent left the hotel before the baggage was brought in and did not return, and that the baggage thus brought into the hotel in Detroit was the trunks and property of complainant. The property was afterwards found in the Detroit hotel, where it was detained for respondent's hotel bill. Other evidence was introduced, but the above is sufficient in order to enable us to understand the questions raised. The respondent was convicted and the case comes here upon exceptions before

sentence.  It is insisted that the property was in the hands of the respondent as bailee; that he had a special property in the goods, and that under such circumstances they were not the subject of larceny; also that the property was never delivered to the respondent, that the checks only were delivered, and that the property remained in the possession of the railroad company.

It is true that the complaining witness did not deliver to the respondent the actual manual possession of the property, but she did deliver to him that which gave him the right to the control and possession of the property, and that acting under the authority which she gave him, he assumed the right to and did exercise acts of possession and control over it.

The evidence tended to show that the disposition of the property as made by him was not only without authority in fact from the owner thereof, but that it was in fact in direct violation of the authority she had given him, and was a conversion of the same to his own use.  The fact that she was a guest at his hotel, and that he would have a lien upon this property for the amount she might be owing him, would not give him authority, under the facts appearing in this case, to dispose of the property as his own.  His good faith and belief that he had such right, would show a want of any criminal or wrong intent, and the jury were so instructed.  An examination of the charge shows the case to have been presented to the jury in such a form that the respondent has no legal cause of complaint.  They were instructed in case they found that the respondent had absolute control over the property, by means of the checks, that such would be a sufficient delivery of the possession to him. They were also instructed that in order to find a conversion, they must find an actual conversion by the respondent to his own use, and also an intent existing at the time of such actual conversion, to thereby deprive the owner of her property therein, and to use it himself; that in case they found an actual possession and actual conversion in Detroit,

and that respondent there assumed absolute control over the property as his own goods, they must also find, in order to convict, the intent thereby to deprive the owner of her property therein absolutely and entirely, that if he had any intent other than this the offense would not be made out. The jury were further instructed that in case they found he claimed to have a lien upon the goods, and thought he had a right to pledge the goods by virtue of having such lien, then such claim of right, if made in good faith, would negative an intent to deprive the owner of her goods.

As we discover no error, it must be so certified to the circuit court, and that judgment be entered on the verdict.

The other Justices concurred.