(January 14, 1905.)

## STATE v. NELSON.

[79 Pac. 79.]

ORDINANCES OF CITIES UNCONSTITUTIONAL WHEN—MAY PROHIBIT WOMEN FROM ENTERING SALOONS FOR IMMORAL PURPOSES—REASONABLENESS OF FINE FOR VIOLATION.

1. An ordinance that provides: "It shall be unlawful for any person maintaining any saloon, barroom or drinking-shop, or any

apartment thereto attached, to permit females to enter their said places of business," is unconstitutional.

2. A city may by ordinance prohibit females from entering places where intoxicating liquors are sold for immoral purposes.

3. An ordinance that provides a punishment by fine of not less than $25 nor more than $200, or by imprisonment in the city jail for not less than ten days nor more than sixty days for violation of an ordinance that prohibits females from entering their places of business for immoral purposes, is not void or unconstitutional, for the reason that it is unreasonable or oppressive.

(Syllabus by the court.)

APPEAL from the District Court of Ada County. Honorable George H. Stewart, Judge.

Appellant tried in district court, found guilty and fined, from which judgment he appealed. Reversed.

The facts are stated in the opinion.

C. C. Cavanah, for Appellant.

The opinion contains all the leading authorities upon the points decided by the courte cited by appellant's attorney.

C. F. Neal and B. F. Kinyon, for Respondent.

The occupation of appellant (that of retailing intoxicating liquors) is one in which he had no inherent and infeasible right to engage. (Black on Intoxicating Liquors, secs. 37, 39; *Giozza v. Tiernan*, 148 U. S. 657, 13 Sup. Ct. Rep. 721, 37 L. ed. 599; *Bartemyer v. Iowa*, 18 Wall. 129, 21 L. ed. 929; *License Cases*, 5 How. 504, 12 L. ed. 256; *Mugler v. Kansas*, 123 U. S. 623, 8 Sup. Ct. Rep. 273, 31 L. ed. 205; *Crowley v. Christensen*, 137 U. S. 86, 11 Sup. Ct. Rep. 13, 34 L. ed. 620.) Section 2 of article 12 of the constitution of the state of Idaho provides: "Any county or incorporated city or town may make and enforce within its limits all such local, police, sanitary and other regulations as are not in conflict with its charter or with the general laws." The ordinances in controversy are valid exercise of the authority conferred by the charter of Boise city and are reasonable police regulations. (*Cronin v. Adams*, 192 U. S. 108, 24 Sup. Ct. Rep. 219, 48 L. ed. 365.)

STOCKSLAGER, C. J.—This action was commenced before the police magistrate of Boise, and charged defendant with permitting a female, one Rena Morrow, to enter and remain in a saloon maintained by defendant, in violation of an ordinance of the said city. A trial was had and defendant was convicted in that court, and an appeal taken to the district court. A trial was had in that court at the February, 1904, term, and defendant was convicted and sentenced to pay a fine of $25 and costs. The appeal is from this judgment.

This prosecution is based on the following section of the ordinance of the city of Boise: "Section 858. It shall be unlawful for any person maintaining any saloon, barroom or drinking-shop, or any apartment thereto attached, to permit females to enter their said place of business or maintain any sign, or offer any inducement or any invitation to females to enter any such saloon, barroom or drinking-shop kept within the city of Boise. Approved Sept. 24, 1903."

This section was introduced in evidence and was the state's exhibit "A." State's exhibit "B" follows: "Any person violating any of the provisions of sections 855, 856, 857 or 858, shall, upon conviction before the police magistrate be punished by a fine not less than $25, nor more than $200, or by imprisonment in the city jail for not less than ten days nor more than sixty days." Section 872 provides: "In all cases where a fine shall be imposed upon a person for a violation of any of the ordinances of said Boise city, such fine may be collected under the ordinances of said city and laws of Idaho, or by imprisonment at hard labor in the city prison, or by working any person sentenced to such imprisonment upon the streets, parks, public squares, workhouse or house of correction, during the term thereof, until such fine and costs be paid, at the rate of one day for every two dollars of said fine and costs, provided the total time of imprisonment shall not exceed sixty days."

It is first urged by counsel for appellant that "this objection to the introduction in evidence of sections 858, 859 [plaintiff's exhibits 'A' and 'B'], should have been sustained, for the reason that such sections of the revised ordinances of Boise city are invalid, void, unreasonable and an interference with

individual liberty granted to the citizens of Idaho by the constitutional laws of Idaho, and in its operation imposes an unjust and illegal punishment upon the owners of places where liquors are sold, whenever a female enters said places, although she may enter there upon lawful business, and creates an unequal, unjust and illegal discrimination against women who enter such places upon lawful business."

This seems from the record to be the sole question presented for our consideration in this appeal. If the section of the ordinance, state's exhibit "A," is valid, we do not think the penalty provided by state's exhibit "B" too severe. The evident intent of both sections above referred to is in the interest of morals and for the general good of the people of the city. All good citizens should join in an effort to protect the people from immoral influences, and especially the young people of the community. With this object in view, we will examine the provisions of the ordinance in controversy. In support of his contention that the provision of the ordinance under discussion is invalid, void, unreasonable and an interference with individual liberty, counsel for appellant cites *Gastenau v. Commonwealth,* 108 Ky. 473, 94 Am. St. Rep. 386, 56 S. W. 705, 49 L. R. A. 111. The ordinance in that case is dissimilar in some particulars to the one under consideration, but the reasons for declaring the ordinance unconstitutional seem to be applicable to the case at bar. The language of the ordinance is as follows: "Be it ordained by the board of council of the city of Middlesboro, Bell county, Ky.: (1) That it shall be unlawful for any woman to go in and out of any building where a saloon is kept offering for sale any spirituous, vinous, and malt liquors, or to frequent, loaf, or stand around said building within fifty feet thereof. (2) That it shall be unlawful for any saloon-keeper, or his clerk or employees to allow or permit any woman or women to come in or out of his building where spirituous, vinous, and malt liquors are sold or offered for sale, and it shall be the duty of said saloon-keeper, clerk or employees to immediately notify the officers that the first section of this ordinance has been violated, giving the name and color of the offender." These two sections are followed by section 3,

which provides for the punishment of the proprietor if he violates section 2, and for the offender if she violates section 1. The Kentucky court, speaking through Mr. Justice Gaffy, disposes of the case in the following concise and forcible language: "It is contended for appellee that the sole object of the ordinance is to regulate and control the sale of liquors by reason of the fact that very disreputable, low and vile women congregate in and about saloons and places where liquor is sold, thereby causing affrays, fights, murder and other crimes. . . . . It seems to us that the ordinance in question is unreasonable and an unnecessary interference with individual liberty, and tends to subject the vender of liquors as well as citizens to unreasonable prosecutions. If the ordinance only included the persons mentioned in appellee's brief, we are not prepared to say that it would be invalid. But it might be that very good women would, for proper and legal purposes, find it necessary to go into a building where liquors are sold, . . . . and besides, we know of no rule which prohibits a well-behaved woman, for a lawful purpose, and in a lawful manner, from going into or near a saloon. It may be taken for granted that it is not often that such would be the case, but the ordinance in question makes no exceptions. If the citizens of Middlesboro choose to have saloons established where liquor is sold, it follows that all orderly and well-behaved persons have a right in an orderly manner, and for a lawful purpose, to visit such saloons." The judgment was reversed and the lower court directed to adjudge the ordinance in question invalid and unconstitutional. For the reason that this case is particularly applicable to the case at bar, we have quoted almost the entire opinion.

Counsel for respondent urges that the ordinance under consideration in the case above cited, after making it a misdemeanor for "a woman to go into a building where liquor was sold," went further, and provided that it was a misdemeanor also for a woman to "stand within fifty feet of such building." Counsel for respondent further say: "The last clause of this ordinance is an obviously unnecessary interference with personal liberty which finds no parallel in the ordinance in question in the case at bar." It is true that the ordinance in the

Kentucky case does add the last clause as suggested by counsel, and that no such provision is contained in the ordinance under consideration, but it will be observed that the court in passing upon the provisions of the ordinance devoted nearly the entire opinion to a discussion of the clause that prohibited women from entering a building where intoxicating liquors were sold.

In *Re Ah Jow,* 29 Fed. 181, it is shown that the city of Modesto passed an ordinance, one section of which provided that "Every person who, in the city of Modesto, keeps or maintains any room or other place where opium, or any of its preparations is sold or given away, and every person who resorts to, frequents or visits such room or place is guilty of a misdemeanor; provided, that this section shall not apply to the sale or gift of any of the preparations of opium by any druggist for any ailment not caused by the use of opium or any of its preparations." The opinion, which is by Mr. Justice Sawyer, on this particular feature of the ordinance, says: "This language is extremely comprehensive and embraces every possible case of visiting such room or place, no matter whether for a proper and lawful or improper and unlawful purpose; whether the party has knowledge or is ignorant of the character of the room or place; whether he visits it innocently or otherwise; neither knowledge nor purpose of the visit is made an element of the offense. The mere fact of going there without any other element is made an offense."

In *Hechinger v. City of Maysville,* another Kentucky case by Mr. Justice Gaffy, reported in 22 Ky. Law Rep. 486, 57 S. W. 619, 49 L. R. A. 114, the ordinance provided: "That it shall be unlawful for any person or persons other than the husband, father, or brother or other male relative, to associate, escort, converse or loiter with any female known as a common prostitute, either by day or by night, upon any of the streets or alleys of the city of Maysville, and any person or persons other than the said husband, father, brother or other male relative, so offending shall, upon conviction thereof, before the police court in said city be fined." It is said in the opinion: "Manifestly, the ordinance was intended to accomplish a proper and

laudable object, but it seems to us it is not properly guarded. , . . . Any person should be allowed to converse with such female long enough to transact any necessary and legitimate business."

Mr. Dillon, in his work on Municipal Corporations, volume 1, fourth edition, section 322, in discussing the powers of municipal corporations to enact laws or ordinances for the punishment of crime, says: "As it would be unreasonable and unjust to make, under the same circumstances, an act done by one person penal and if done by another not so, ordinances which have this effect cannot be sustained. Special and unwarranted discrimination or unjust or oppressive interference in particular cases is not to be allowed. The powers vested in municipal corporations should, as far as practicable, be exercised by ordinances general in their nature and impartial in their operation." (See 1 Dillon on Municipal Corporations, 4th ed., sec. 325.)

In volume 21, American and English Encyclopedia of Law, 990, under the head of "Construction of Common Rights," this subject is discussed and the authorities of a large number of the states bearing on this question cited. Mr. McClain, in his work on Criminal Law, volume 1, section 65, in discussing the subject of reasonableness of ordinances, says: "An ordinance which the city passes in the exercise of the powers given it must be reasonable and the courts have authority to inquire into that question to a greater extent than they have with reference to state statutes," citing a number of authorities to support the text.

On the same subject we find the following language in volume 21, American and English Encyclopedia of Law, 985: "It is well established as a general rule that ordinances in order to be valid and binding must be reasonable and not arbitrary or oppressive, and ordinances which do not conform to this requirement will be declared void." Numerous cases are cited from many of the American states in support of this rule. In *Commonwealth v. Worcester,* 3 Pick, 462, it is said: "Whether a by-law be reasonable or not is for the court to determine."

For a very able and interesting discussion of the powers and duties of city authorities, as well as the courts in passing upon

questions similar to the one before us, see *Helena v. Dwyer*, 64 Ark. 424, 62 Am. St. Rep. 206, 42 S. W. 1071, 39 L. R. A. 266.

In support of the contention that this ordinance should be sustained, counsel for respondent rely upon *Adams et al. v. Cronin,* reported in 29 Colo. 488, 69 Pac. 590, 63 L. R. A. 61. We have read this case with much interest and care and are in full accord with every principle of law enunciated. A careful examination of this case, however, discloses that a very different ordinance was before the Colorado court for determination to the one we are called upon to construe. Section 745 of the Denver ordinance provided: "Each and every liquor saloon, dramshop or tippling-house keeper . . . . who shall have or keep in connection with or as part of such liquor saloon, dramshop or tippling-house, any wineroom or other place either with or without door or doors, curtain or curtains, or screen of any kind, into which any female person shall be permitted to enter from the outside, or from such liquor saloon, dramshop or tippling-house, and there be supplied with any kind of liquor whatsoever, shall upon conviction be fined as hereinafter provided." Section 746 provides: "No person having charge or control of any liquor saloon . . . . shall suffer or permit any female person to be or remain in such liquor saloon, dramshop, tippling-house or other place where intoxicating or malt liquors are sold or given away, for the purpose of their being supplied with any kind of liquor whatsoever . . . . nor shall any female person be or remain in any dramshop, tippling-house, liquor saloon or place adjacent thereto or connected therewith and wait or attend on any person or solicit drinks in any such place." This ordinance was declared valid—and why not? No provision in the ordinance that an orderly, well-behaved woman might not enter any saloon in the city of Denver for the transaction of legitimate business and as often as she felt so disposed, so long as she did not visit such place for the purpose of being supplied with liquors or other immoral purposes. This ordinance falls strictly within the rule laid down in *Gastenau v. Commonwealth, supra,* and indeed all the cases to which our attention has been called and heretofore referred to in this opinion. It was aimed at the very class of women who are usually termed the unfor-

tunates of the human family, and was designed to discourage and prevent their presence in and around saloons, tippling-houses and wherever intoxicating liquors are sold. There is no attempt to prohibit a woman in the ordinary course of business to enter such places in the discharge of her business or for any legitimate reasons. The distinction between that ordinance and the one under consideration is easily drawn. The Denver ordinance prescribed a punishment for an offense that the proprietor must commit himself, whilst the Boise City ordinance provides a punishment for the proprietor if any woman enters his place unbeknown to him, without his consent and against his will, no matter what her motive or intent may be. There is no exception; the mere matter of entrance is the essence of the crime. There is no question about the power, and we may say the duty, of the city authorities to enact such ordinances as will promote morals and regulate the sale of intoxicating liquors in such a way as to prohibit immoral women from frequenting such places for the purpose of drinking, engaging in games, soliciting trade, or any other immoral purpose, but to say by an ordinance that a wife or mother may not enter a saloon without subjecting herself to a fine (as well as the proprietor) in search of a recreant husband or a wayward son, is beyond the legal power of the city. So long as the state and the city of Boise see fit to license the retail sale of liquors, so long must they protect parties lawfully engaged in that business in a reasonable way.

The judgment is reversed and cause remanded for further proceedings consistent with this opinion.

Ailshie, J., and Sullivan, J., concur.