STATE OF IOWA v. D. C. O'NEIL, Appellant.

**Intoxicating liquors:** STATUTES: PROHIBITED ACTS: EFFECT OF HOLD-
ING STATUTE UNCONSTITUTIONAL. Code, section 2382, as amended,
prohibiting persons from soliciting or accepting orders for the
purchase, sale, shipment or delivery of intoxicating liquors, was
originally held unconstitutional by the Supreme Court of this
state. Later the Supreme Court of the United States in another
case declared the statute to be valid and our court subsequently
followed that decision, overruling its own prior decisions.

*Held,* in this action that defendant could not be prosecuted for
the doing of acts prohibited by the statute after it was declared
invalid by our court and prior to the later determination holding
the statute valid.

Deemer, C. J., Sherwin and Weaver, JJ., in concurring opinions.

*Appeal from Wayne District Court.*—HON. H. M.
TOWNER, Judge.

MONDAY, MAY 16, 1910.

DEFENDANT was accused before a justice of the peace
of the crime of soliciting, taking, and accepting orders
for the purchase, sale, and shipment of intoxicating liq-
uors. The case was tried on an agreed statement of facts,
and resulted in defendant's conviction. He thereupon ap-
pealed to the district court, where the defendant filed a
motion for judgment upon the agreed facts. This motion
was overruled, and defendant, pleading guilty after the
overruling of his motion, was again convicted for the of-
fense charged. He then appealed to this court.—*Reversed.*

*Porter & Greenleaf,* for appellant.

*H. W. Byers,* Attorney-General, and *Charles W. Lyon,* Assistant Attorney-General, for the State.

MCCLAIN, J.—An agreed statement of facts filed on the trial before the justice of the peace was the basis of the finding of the district court that defendant in October, 1908, solicited, accepted, and took from various persons orders for the purchase by them and sale and shipment to them of intoxicating liquors from and by a certain brewing company in Kansas City, Mo., said orders being subject to the approval of said company, and that the liquors so ordered were to be shipped directly to the persons named from the place of business of said company. Defendant's motion for judgment in his favor, which was overruled, recited that the acts charged were not criminal under the law of this state at the time of their commission, and, further, that the statute of the state making such acts criminal is in violation of the Constitution of the United States as an interference with the clause thereof relating to interstate commerce and statutes on that subject passed by Congress. The acts with which defendant was charged were in violation of the provisions of Code, section 2382, as amended by Acts 28th General Assembly, chapter 74 (Code Supp., section 2382), prohibiting any person from soliciting, taking, or accepting "any order for the purchase, sale, shipment or delivery of any (intoxicating) liquor." In the case of *State v. Hanaphy,* 117 Iowa, 15, followed in *State v. Bernstein,* 129 Iowa, 520, decided, respectively, in 1902 and 1906, this statute was held unconstitutional, as in violation of the interstate commerce clause of the federal Constitution. In 1909 this court, relying upon the decision of the Supreme Court of the United States in the case of *Delamater v. South Dakota,* 205 U. S. 93 (27 Sup. Ct. 447, 51 L. Ed. 724), decided in 1907, reached the conclusion that its previous holding that the statute was in violation of the federal Constitution was

erroneous, and expressly overruled the two cases in which
that conclusion had been announced, and sustained a judg-
ment enjoining the maintenance. of a place for carrying
on the business of soliciting, taking, and accepting orders
for the purchase, sale, and shipment of intoxicating liq-
uors for and on behalf of a corporation located and doing
business in another state as a nuisance. *McCollum v.
McConaughy,* 141 Iowa, 172.

It will be noticed that the acts charged as against this
defendant (and in fact also the filing of the information
before the justice of the peace) were after the Supreme
Court of this state had held the statute to be unconsti-
tutional, and also after the decision of the Supreme Court
of the United States in a somewhat similar case from
South Dakota sustaining the validity of such a statute
as against the contention that it was in violation of the
federal Constitution, but prior to the action of this court
in reversing its prior decisions in reliance on the later
decision of the Supreme Court of the United States. The
contention for defendant is that the decision of this court
sustaining the constitutionality of the statute should not
be given a retroactive effect, and defendant should not be
punished for acts which according to the prior decisions
of the Supreme Court of this state were lawful.

It is, of course, well settled that a statute which has
been held unconstitutional either *in toto* or as applied to
a particular class of cases is valid and enforceable without
re-enactment when the supposed constitutional objection has
been removed, or has been found not to exist. That was
the holding in *McCollum v. McConaughy, supra,* and is
not now questioned. See, also, *Pierce v. Pierce,* 46 Ind.
86. And the conviction below was proper, unless some
benefit is to be given to defendant of the fact that, when
the acts were committed, the latest announced decision
of this court was to the effect that the statute was uncon-
stitutional, and therefore not enforceable. It is only by

analogy, applying the rule of precedent and not of adjudication, that the decision in one case becomes in any sense the law in another case. The analogy may be so complete that the reasoning of the one- case necessarily points out the conclusion to be reached in the other, and, if so, the court feels bound to bow to its previous decision, unless it is made to appear that it is so manifestly erroneous that it should be overruled. If overruled, its force as a precedent ceases, and the later decision becomes a precedent. The analogy, however, may be incomplete, and then it is for the court to determine in the subsequent case whether the reasoning of the prior case is applicable under circumstances in some of which the cases are similar, and in others dissimilar. It is not the function of a court to lay down the law for future cases, but to announce the law for the case which it is deciding. It is an important function of an appellate court to so announce its reasons for decision that they may be understood and applied with reference to subsequent cases which are likely to arise, but no court can attempt to anticipate by announcement what the law will be found to be in a case in some respects dissimilar which may subsequently arise. Therefore, as has often been said, there is no vested right in the decisions of a court, and, under the clause in the federal Constitution prohibiting any state from passing any law impairing the obligation of contracts, the Supreme Court of the United States has uniformly held that the change of decisions of a state court does not constitute the passing of a law, although the effect of such change is to impair the validity of a contract made in reliance on prior decisions. *National Mut. B. & L. Ass'n v. Brahan,* 193 U. S. 635 (24 Sup. Ct. 532, 48 L. Ed. 823); *Central Land Co. v. West Virginia,* 159 U. S. 103 (16 Sup. Ct. 80, 40 L. Ed. 91). And see *Storrie v. Cortes,* 90 Tex. 283 (38 S. W. 154, 35 L. R. A. 666); *Swanson v. Ottumwa,* 131 Iowa, 540; *Lanier v.*

*State,* 57 Miss. 102. It is also quite clear that the change in the decisions of a court of a state does not violate the prohibition found in the same clause of the federal Constitution against the making of *ex post facto* laws.

From the conclusion that in a constitutional sense there is no vested right in reliance on decisions of the court as precedent, and that one who is brought into court for a violation of law can not sustain himself on the mere plea that in some other case which he thought to be analogous the court rendered a decision which, if applied as he thought it would be applied, would result in exculpating him from wrong, it does not necessarily follow that the court can not take into account as a controlling consideration in reaching the conclusion as to the justice of a case that the party charged with wrongful conduct relied reasonably and in good faith upon decisions of the courts in determining whether a wrong was committed. The Supreme Court of the United States, while recognizing its general obligation to follow the decisions of the courts of the state in which a contract is made in determining its validity, has held that it will not recognize a change of rule in a state made by judicial decision where the effect of such change is to render invalid contracts which according to the views previously expressed by the state courts at the time the contracts were made were valid. *Gelpcke v. City of Dubuque,* 1 Wall. 175 (17 L. Ed. 520); *Thompson v. Lee County,* 3 Wall. 331 (18 L. Ed. 177); *Douglass v. Pike County,* 101 U. S. 677 (25 L. Ed. 968); *Center School Tp. v. State,* 150 Ind. 168 (49 N. E. 961). In *Muhlker v. New York & Harlem R. Co.,* 197 U. S. 544 (25 Sup. Ct. 522, 49 L. Ed. 872), the judges whose views on this point are expressed in the opinions filed were equally divided on the question whether one acquiring property in reliance on decisions of the courts of the state relating to his rights in an abutting

street had a vested right as against a subsequent change of decision in the state courts. These cases are cited, not as indicating any constitutional duty on the part of the courts of a state to protect a litigant in rights which he in good faith supposed he had already acquired by reason of previous decisions of the same court in other cases, but for the purpose of illustrating the extent to which a court may properly go in administering the law for the purpose of effectuating justice; that is, for the purpose of rendering such decision as shall appeal to intelligent and fair-minded people as right and proper. Courts have always taken such considerations into account in the enforcement of legislative enactments. Before there was any separate equity jurisdiction, and when the term equity was used as a mere synonym of equality and justice, the courts interpreted statutes with a view to their equity, and not merely in accordance with their strict terms; so that the case might be within the equity of a statute, although not expressly covered by it, and, *vice versa,* the statute might be held not applicable in its equity, although its strict terms covered the case. The term "equity of a statute" has fallen into disuse since the establishment of a system of equity jurisprudence, but the courts have not ceased in either branch of their jurisdiction to give consideration to the general purpose of the lawmaker as furnishing a guide to interpretation. See Dr. Hammond's note in his edition of Lieber's Hermeneutics, page 283. This again is but an illustration of the effort the court will properly make to do justice in a broad sense. In criminal cases, where the life or liberty of an individual is involved on one side, and the enforcement of law in the interest of the public welfare on the other, no private right of contract or property being imperiled by liberality of construction, the courts go further than in civil cases to recognize the common judgment of humanity as to what is right and just, and they allow

many exceptions to statutory definitions of what shall constitute a crime. For instance, in this state, although there is no statutory recognition of a coverture as a defense on the part of a married woman for a crime committed in the presence of her husband, we have said that the common-law exception in that respect is applicable. *State v. Fitzgerald*, 49 Iowa, 260; *State v. Kelly*, 74 Iowa, 589; *State v. Harvey*, 130 Iowa, 394.

And ·it is the general rule in all the states of the Union, even those in which the criminal law is codified, to recognize infancy and insanity as relieving from the punishment prescribed by statute for criminal offenses as they ·were recognized at common law, although such defenses are not allowed under any express statutory provision. The assumption is that even the statutory criminal law is to be administered in accordance with the general principles of right and justice recognized in the common-law system. 1 Bishop, New Criminal Law, section 35. In the determination of the criminality of an act even under the statutory definition, the intent is a material consideration. It is the absence of criminal intent which constitutes the basis of the defenses of infancy, insanity and coverture. Ignorance and mistake are also recognized in the same category, but here enters a question of public policy. One who is bound to obey the law ought not to be allowed to say that he was ignorant of it. He may show as a defense that he was mistaken as to a fact which, if it had been as he supposed it to be, would have rendered his act lawful, but he can not say that if the law had been as he supposed it to be, his act would have been lawful and he should not be punished. This principle of public policy has become crystallized into the maxim, "Ignorance of the law excuses no one," and as applied to the present case, it might well be said, if we followed this maxim, that defendant is not to be excused because he did not know the law, that is, did not know that the

previous decisions of this court holding the statute which he was violating to be unconstitutional were wrong and the statute was in fact valid and operative. As between conflicting rights, we might well refuse to allow any impairment of so well settled a principle, and hold that parties act at their peril as to what the law shall be decided to be. But as already indicated, in a criminal case there is no such imperative obligation, for after all the punishment of crime is a matter of public concern only and we think that it would strike any reasonable and fair person as manifestly unjust that one should be adjudged criminal in having done an act not morally wrong, but only wrong because prohibited by statute, that is, an act *malum prohibitum* and not one *malum in se,* relying upon the decisions of the highest court in the state holding such statute to be wholly invalid because in excess of the power of the Legislature to enact it.

In this connection it is to be noticed that the decisions of courts as to the constitutionality of a statute stand on somewhat different ground than those relating to the common law or the interpretation of statutes, as applied to particular cases. The function of determining whether a statute is invalid because in excess of the legislative power is one peculiar to our system of government, and unknown in other jurisdictions in which the common law prevails. It is true that such an adjudication is made in a particular case. Although the power to be investigated is that of the legislative department itself which can not be a party so as to be bound by any judicial decision, nevertheless the courts discuss such question when it arises, and decide the matter not only for the purpose of determining the rights of particular parties, but with reference to the effect of the decision upon the law of the state. A statute unconstitutional properly remains on the statute books as a part of the written law, but those who are bound to obey the law may, we think, reasonably

take into account the decisions rendered by the courts in
the exercise of their peculiar function of passing upon
the constitutionality of the statutes in determining what
the law of the state really is. To the ordinary mind it
would smack of absurdity to say that defendant ought
to have known that the statute was constitutional, and
would in case he violated it be enforced against him, al-
though the Supreme Court of the state had fully consid-
ered the validity of the statute as against the claim that
it was unconstitutional, and had unanimously held that
it was in excess of state legislative power as to its entire
subject-matter, and therefore invalid. Under such circum-
stances, it is plain that there should be some relief to
defendant from punishment, for the very purpose of pun-
ishment is defeated, if unreasonably and arbitrarily im-
posed. Respect for law, which is the most cogent force in
prompting orderly conduct in a civilized community, is
weakened, if men are punished for acts which according
to the general consensus of opinion they were justified in
believing to be morally right and in accordance with law.
If we should sustain the conviction, we would do so in
the belief that the case was one in which executive clem-
ency ought to be exercised. But is it quite fair to throw
upon the executive the responsibility of relieving from
punishment on account of the very nature of the act com-
mitted which is made apparent to this court, and its
nature as being innocent or guilty appears to depend upon
the effect to be given to the decisions of this court? We
think we would be shirking our responsibility if we should
leave it to the executive to do what we believe to be mani-
fest justice in this case, and should stigmatize the defend-
ant with a conviction for crime when as it appears he
was innocent of any real wrong. We think the real ques-
tion as to the guilt of defendant is to be settled by re-
ferring to the doctrine of criminal intent, which has always
been held to be of the essence of a crime. 1 Bishop, New

Criminal Law, sections 205, 285-291b. And justifiable ignorance or mistake has always been taken into account in determining the criminality of the act. 4 Blackstone, Commentaries, 27; 1 Bishop, New Criminal Law, sections 292-312; *Regina v. Prince*, L. R. 2 C. C. 154. For reasons already pointed out, mere ignorance of law does not excuse, and even ignorance of fact which the statute expressly or impliedly makes it the duty of one acting in reference to the subject-matter regulated by the statute to know and with reference to which he is required to act at his peril will not excuse him. But even as to these strict rules there are necessary exceptions. If a mistake of fact is due to mistake of law, so that it appears there is no guilty mind, punishment should not be imposed. *Rex v. Hall*, 3 Carr. & P. 409 (14 E. C. L. 635); *Regina v. Reed*, 1 Carr. & M. 306 (41 E. C. L. 170); *People v. Powell*, 63 N. Y. 88; *People v. Husband*, 36 Mich. 306; *Commonwealth v. Stebbins*, 8 Gray (Mass.) 492. And no matter how stringently the statute may impose the duty of knowing the facts on which the defendant has relied in a course of conduct that is prohibited, save under certain prescribed conditions, the common-law exceptions which relieve on account of lack of criminal intent due to infancy, insanity, coverture, or necessity are recognized. *State v. Cutter*, 36 N. J. Law, 125; *The Brig William Gray* (U. S. C. C.), 1 Paine 16 (Fed. Cas. No. 17,694). These cases are cited not as directly in point for the solution of our present difficulty, but as illustrations of the fact that courts must, especially in the administration of the criminal law, make exceptions in the interest of justice and public policy to rules which it is very essential to maintain in ordinary cases. An exception to the rule that every one is required to know the law is justified, we believe, when, as to the validity of a statute on constitutional grounds, a person has relied upon the expressed

decisions of the highest court in his state. We do not believe such exception to be against public interest, but rather in the furtherance of justice. This question seems not to have often arisen so as to have been considered in courts of last resort, but we have support in the conclusion we have reached in the cases of *State v. Bell,* 136 N. C. 674 (49 S. E. 163), and *State v. Fulton,* 149 N. C. 485 (63 S. E. 145).

That our conclusion in this case may not be misapprehended and relied upon in support of propositions to which we have no disposition to yield consent, we desire to emphasize the following controlling conditions. This is a criminal case, and therefore involves no conflicting claims as to contractual or property rights. The defendant may be presumed to have acted with knowledge of the fact that the statute now invoked as rendering illegal an act not otherwise wrongful or immoral had been expressly held by this court in cases prosecuted under public authority to be unconstitutional because in excess of legislative power.

The judgment of the trial court is *reversed.*

DEEMER, C. J. (concurring).—While concurring in the result reached, the case is so peculiar in its facts and the principles upon which it is decided by the majority opinion, so important, that I deem it my duty to express my views thereon in a separate opinion. I am constrained to do this largely because of the fact that it is an illustration of the truth of Lord Campbell's exclamation of many years ago, that "hard cases must not make bad law." Some things are said in the majority opinion with which I fully agree, but there are other statements therein which I can not approve, and which I think will rise to plague us in the future if they be adopted without dissent. The majority make the decision turn, as I understand it, upon the thought that defendant had no criminal

.intent, and for that reason should not be punished for his violation of a statute which to my mind involves no question of intent, other than the doing of the prohibited act. I do not believe that this is sound.

Again, the opinion seems to proceed upon the theory that there is an implied exception in this statute which .the courts should recognize. I do not believe that this is true.

Moreover, ignorance or mistake of law seems to be thought of some merit in deciding the question before us. I fear that the introduction of this principle into the case at bar is fraught with much danger. I must especially dissent from the statement in the opinion that the real question as to the guilt of the defendant is to be settled by referring to the doctrine of criminal intent. The statement in the opinion that "if a mistake of fact is due to a mistake of law, so that it appears there is no guilty mind, punishment should not be imposed," I can not agree to this unless the statute in question in some way makes intent, either general or specific, an element of the offense.

I do not like that part of the discussion in the opinion which treats of the effect to be given judicial opinions, particularly where they involve constitutional questions, or relate to the construction of statutory enactments. I think the case may be decided and properly bottomed upon two well-settled principles. The first one is that a change of judicial decision involving the constitutionality of an act or construing an act of the Legislature should, like an act emanating from the lawmaking power, be given a prospective rather than a retrospective or retroactive operation; second, the Constitution provides that "excessive fines shall not be imposed and cruel and unusual punishment shall not be inflicted." See section 17, art. 1. My own convictions regarding the effect of a change in judicial decisions, as applied to contracts, are fully expressed in the case of

*Swanson v. City of Ottumwa,* 131 Iowa, 540, and need not be elaborated here. I need only quote the following from that opinion: "We are inclined to the view that there is nothing in the Constitution which forbids a change of judicial opinion, except it be with reference to a particular statute, although we must confess that there are some strong cases to the contrary. As supporting our view, see *Storrie v. Cortes,* 90 Texas, 283 (38 S. W. 154, 35 L. R. A. 666); *Center School Tp. v. State,* 150 Ind. 168 (49 N. E. 961); *Land Co. v. Hotel,* 134 N. C. 397 (46 S. E. 748.)" It will be noticed from this extract that, if the decision be with reference to a particular statute, there may be a violation of the constitutional limitation if the change of judicial opinion be with reference to that particular statute. It is quite fundamental, I think, that the judicial construction of a statute becomes a part of it, and, as to rights which accrue afterwards, it should be adhered to for the protection of those rights. As said in Sutherland on Statutory Construction, section 319: "To divest them by a change of the construction is to legislate retroactively. The constitutional barrier to legislation impairing the obligation of contracts applies also to decisions altering the law as previously expounded, so as to affect the obligation of existing contracts made on the faith of the earlier adjudication." As further supporting this view, see *Green v. Neal,* 31 U. S. 291 (8 L. Ed. 404); *Shelby v. Guy,* 11 Wheat. 368 (6 L. Ed. 497). In the case of *Ohio Ins. Co. v. Debolt,* 16 How. 432 (14 L. Ed. 997), Chief Justice Taney said: "That the sound and true rule was that, if the contract when made was valid by the laws of the state as then expounded by all the departments of its government, and administered in its courts of justice, its validity and obligation can not be impaired by any subsequent act of the Legislature or decisions of its court altering the construction of the law." In *Douglass v. Pike County,* 101 U. S. 677 (25 L. Ed. 968),

it was held that: "The true rule is to give a change of judicial construction in respect to a statute the same effect in its operation on contracts and existing contract rights that would be given to a legislative amendment; that is to say, make it prospective, but not retroactive. After a statute has been settled by judicial construction, the construction becomes, so far as contract rights acquired under it are concerned, as much a part of the statute as the text itself, and a change of decision is to all intents and purposes the same in its effect on contracts as an amendment of the law by means of a legislative enactment." The following cases also support this doctrine: *Green County v. Conness,* 109 U. S. 104 (3 Sup. Ct. 69, 27 L. Ed. 872); *Olcott v. Fond du Lac County Sup'rs,* 16 Wall. 689 (21 L. Ed. 386); *Fairfield v. Gallatin County,* 100 U. S. 52 (25 L. Ed. 546); *Carroll County Sup'rs v. United States,* 18 Wall. 71 (21 L. Ed. 771); *Gelpcke v. Dubuque,* 68 U. S. (1 Wall.) 206 (17 L. Ed. 525). In Endlich on Interpretation of Statutes, section 363, it is said: "Judicial interpretation of a statute becomes a part of the statute law, and a change of it is, in practical effect, the same as a change of the statute." See, also, as sustaining this doctrine, *Ray v. Natural Gas Co.,* 138 Pa. 591 (20 Atl. 1065, 12 L. R. A. 290, 21 Am. St. Rep. 927); *Walker v. State,* 12 S. C. 271; *Lyon v. Richmond,* 2 Johns. Ch. (N. Y.) 51; *County Com'rs v. King,* 13 Fla. 463; *Edwards v. Darby,* 12 Wheat. 206 (6 L. Ed. 603); *Stallcup v. Tacoma,* 13 Wash. 152 (42 Pac. 541, 52 Am. St. Rep. 32); *Ex parte Selma R. R.,* 45 Ala. 730 (6 Am. Rep. 730); *Hall v. Wells,* 54 Miss. 301; *Herndon v. Moore,* 18 S. C. 354; *Wickersham v. Savage,* 58 Pa. 369; *State v. Comptoir Nat.,* 51 La. Ann. 1272 (26 South. 94); *Vermont Co. v. Railroad Co.,* 63 Vt. 23 (21 Atl. 262, 10 L. R. A. 565); *Opinion of Judges,* 58 N. H. 625; *Muhlker v. New York,* 197 U. S. 573 (25 Sup. Ct. 522, 49 L. Ed. 872). It must be remembered that I

am not now discussing the effect of a decision relating to that great body of the law known as the unwritten, wherein as I think, a different principle is to be applied.    See further as supporting these views, *Ryalls v. Mechanics' Mills,* 150 Mass. 190 (22 N. E. 766, 5 L. R. A. 667); *Philadelphia Co. v. Ry. Co.,* 53 Pa. 20; *Packard v. Richardson,* 17 Mass. 122 (9 Am. Dec. 123).    It is well settled, of course, that when the Legislature adopts a statute of another state, it adopts with it the judicial construction of that statute as interpreted by the court from which the statute is borrowed.    *Trabant v. Rummell,* 14 Or. 17 (12 Pac. 56); *Pratt v. Am. Bell Co.,* 141 Mass. 225 (5 N. E. 307, 55 Am. Rep. 465).    There is much ground for holding that a change of decision with reference to the interpretation of a statute is to all intents and purposes the same in its effect as an amendment of the law by means of legislative enactment.    That view finds express support in *Farrior v. New England Co.,* 92 Ala. 176 (9 South. 532, 12 L. R. A. 856); *Taylor v. Ypsilanti,* 105 U. S. 72 (26 L. Ed. 1008); *Lane v. Watson,* 51 N. J. Law, 186 (17 Atl. 117); *State v. Bell,* 136 N. C. 674 (49 S. E. 163); *Center Twp. v. State,* 150 Ind. 168 (49 N. E. 961); *Lewis v. Symmes,* 61 Ohio St. 471 (56 N. E. 194, 76 Am. St. Rep. 428); *State v. Fulton,* 149 N. C. 485 (63 S. E. 145); *Haskett v. Maxey,* 134 Ind. 182 (33 N. E. 358, 19 L. R. A. 379); *Loeb v. Trustees,* 179 U. S. 472 (21 Sup. Ct. 174, 45 L. Ed. 280), and cases cited; *State v. Mayor,* 109 Tenn. 315 (70 S. W. 1031); *Gross v. Board,* 158 Ind. 537 (64 N. E. 25, 58 L. R. A. 394); *Harmon v. Auditor,* 123 Ill. 122 (13 N. E. 161, 5 Am. St. Rep. 510); *Mountain Bank v. Douglass County,* 146 Mo. 42 (47 S. W. 946); *Stockton v. Mfg. Co.,* 22 N. J. Eq. 56; *Richardson v. County,* 100 Tenn. 346 (45 S. W. 440); *Falconer v. Simmons,* 51 W. Va. 172 (41 S. E. 193).

In very many of these cases it is squarely held that

a change of judicial opinion should be given the same effect as a subsequent enactment of the Legislature; that is to say, a prospective operation in order to avoid the objections which have just been pointed out. I shall not take the time to quote from all of these; but do wish to call attention to what is said to be a well-established and well-understood exception to the rule pointed out in the majority opinion. This exception, as stated in the *Haskett* case, *supra,* is as follows: "After a statute has been settled by judicial construction, the construction becomes, so far as contract rights are concerned, as much a part of the statute as the text itself; and a change of decision is to all intents and purposes the same in effect on contracts as an amendment of the law by means of legislative action." In *Douglass v. Pike County, supra,* it is said: "The true rule is to give a change of judicial construction in respect to a statute the same effect in its operation on contract and existing contract rights that would be given to a legislative amendment; that is to say, making it prospective, but not retroactive." In the *Hawkins* case, *supra,* it is said: "The true rule affirmed by the authorities, and the prevailing one, is to give a change of judicial construction in regard to a statute the same effect in its operation, so as not to disturb vested rights, as would be given to a legislative amendment; that is, apply the change made in the interpretation of the law so as to operate prospectively, and not retroactively." If this be the rule with reference to the interpretation of statutes in actions involving property or contract rights, and such seems to be the doctrine established by the weight of judicial decisions, there is the more reason for holding it applicable to criminal cases, particularly where the court has once held the criminal statute void and of no effect because contrary to some provision of the fundamental law. That it is within the power of the courts of this country to declare a statute inoperative and void because contrary

to the Constitution is well established, and such decisions are binding, not only upon the parties immediately involved,. but upon all departments of government; indeed, upon the state itself. An unconstitutional statute is absolutely void. It is, so to speak, as so much waste paper, and according to the uniform tenor of the authorities such a determination is conclusive on every one until reversed or overruled. *People v. Briggs*, 114 N. Y. 63 (20 N. E. 820); *People v. Arensberg*, 105 N. Y. 123 (11 N. E. 277, 59 Am. Rep. 483); *People v. West*, 106 N. Y. 293 (12 N. E. 610, 60 Am. Rep. 452); *People v. Kibler*, 106 N. Y. 321 (12 N. E. 795); *Douglass v. Pike Co., supra*. Such a statute may be vitalized or resuscitated by a decision overruling prior ones holding to the contrary, and this occurs although there be no reenactment by the Legislature. But, when once determined to be unconstitutional, the Legislature itself can not cure the defects in the law by declaring the act constitutional; nor has any other department of government any such power. As said, the decision is binding upon every one save the court itself. If this be true, it is little short of an absurdity to say that a decision finally upholding the statute as a valid exercise of legislative power should be given retroactive effect, and that acts done at a time when the statute had been declared void by the highest tribunal of the state must be punished because that court took a new view of the constitutional provision. In a criminal case every one is conclusively presumed to know the law, but he is not expected to know the law better than the courts, or to know what the law will be at some future day. A decision holding a statute unconstitutional is the law until overruled or reversed, and that decision, as we have observed, is binding upon every one. To hold that one may not do what an unconstitutional statute forbids him doing because the court may change its mind is to say that, although declared null and void by the only tribunal

having that power, such decision is of no effect, and can not be made a rule of human conduct because the court may change its mind, is in effect to deprive the court of its power to annul a statute because of its unconstitutionality. As already intimated, there is a wide distinction between cases involving the validity and interpretation of statutes and those which have to deal with the common or unwritten law, for the reason that the judicial construction of a statute is a part of the law itself. Exposition of a statute is a part of the statute. There is every reason, therefore, for holding that a decision holding a criminal statute constitutional, which had theretofore been held unconstitutional, should not be given retroactive effect. Until the decision in the *McCollum* case, cited in the majority opinion, the statute was absolutely of no effect. In *State v. Fulton*, 149 N. C. 485 (63 S. E. 146), it is said: "The judicial interpretation of a statute becomes, as it were, a part of the statute, and, if that interpretation is afterward changed or modified, the defendant should be tried under the law as it had been declared to be at the time the alleged offense was committed simply because it was the law at the time. The defendant, it is true, had no vested right in a decision of this court, but it does not follow that we should reverse our decisions, and then declare that to be criminal which we had decided was not so at the time of the commission of the alleged offense." Judge Cooley, in his work on Constitutional Limitations, says at page 188 of the third edition: "When a statute is adjudged to be unconstitutional, it is as if it had never been. Rights can not be built up under it. Contracts which depend upon it for their consideration are void. It constitutes a protection to no one who had acted under it, and no one can be punished for having refused obedience to it before the decision was made." I see no good reason for not holding that this case comes within the provision of section 21, of article 1

of the Bill of Rights, which prohibits the passage of *ex post facto* laws. An *ex post facto* law is one which makes an act innocent when done a crime. *State v. Squires,* 26 Iowa, 340. Strictly speaking, perhaps, this refers only to laws passed by the Legislature, but there is every reason for holding that it also applies to a change of judicial decisions. Decisions of courts construing statutes or declaring them unconstitutional are as much a part of. the law of the land as legislative enactments. They become a part of the body of the law itself, and are not merely the evidences thereof as are decisions relating to the unwritten or common law.

II. I am very clearly of the opinion that no other basis is needed for the conclusion, which every one desires to reach in this case, than the constitutional provision against cruel and unusual punishment. These terms had a well-defined significance in England where there is no written Constitution; and in interpreting our written Constitution we are not only justified, but it is our duty, to look for the meaning of these terms as found in the decision of courts and the works of commentators published before the adoption of the Constitution. Sir William Blackstone, in treating of the nature of the laws of England (volume 1, p. 46), said: "There is still a more unreasonable method than this, which is called making laws 'ex post facto,' when after an action, indifferent in itself, is committed, the Legislature then for the first time declares it to have been a crime, and inflicts a punishment upon the person who has committed it. Here it is impossible that the party could foresee that an action, innocent when it was done, should be afterwards converted to guilt by a subsequent law. He had therefore no cause to abstain from it, and all punishment for not abstaining must of consequence be cruel and unjust." Such legislation was regarded as invalid in England, where they have no Constitution, on the ground that the punishment was

cruel and unjust. The article of the Constitution referred to does not relate to laws passed by the Legislature. The broad statement is that cruel and unusual punishment shall not be inflicted. Reading this in the light of the rule as stated by Blackstone, which is well fortified by authority, there seems to be no difficulty in holding that to punish defendant for acts which were innocent when done would be both cruel and unjust. Other reasons might be given, but I believe those already suggested are sound, and should rule the decision.

I think the majority do not give sufficient weight to the decisions of courts interpreting statutes or declaring them unconstitutional; and, in an endeavor to do justice, have announced rules which are unsound in principle and not sustained by authority. The analogy between the defenses of insanity and infancy and the defense interposed here is not apparent.

I concur in reversal of the judgment for the reasons indicated.

SHERWIN, J.—I concur in the views expressed in the first division of the opinion announced by Chief Justice Deemer.

WEAVER, J. (concurring).—If the majority had announced the conclusion that under our peculiar system of government it is an implied term or condition in every statute defining crime that its penalties are not to be enforced for an act done after an authoritative judicial decision declaring the enactment unconstitutional and before a later decision by which the former is overruled and the validity of such law judicially affirmed, I should not burden the record with any expression of my individual views. The authority of a court to say that a statute is not applicable to every case apparently included within its general terms is a delicate if not dangerous one which

in the hands of a reckless judiciary would be productive of the gravest abuses, but it is nevertheless a necessary authority, and one to which the most eminent courts of the country have at times resorted. General statutes are necessarily stated in general terms to effect certain general or specific results, and it not infrequently happens that we find a case which is embraced within the literal general terms of the law, but which, we are morally certain, is not within its intent, and, when such appears to be the case, the enforcement of such law is restricted accordingly. In line with this thought I quote the following: "Acts of Parliament are to be construed as no man that is innocent or free from injury or wrong be by a literal construction punished or endangered." *Margaret Pier Co. v. Hannam,* 3 B. & A. 266. "If a literal construction of the words of a statute be absurd, the act must be so construed as to avoid the absurdity." *State v. Clark,* 29 N. J. Law, 96. "All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression or an absurd consequence. It will always, therefore, be presumed that the Legislature intended exceptions to its language which would avoid results of this character. The reason of the law in such cases should prevail over its letter." *United States v. Kirby,* 74 U. S. 482 (19 L. Ed. 278). See, also, *United States v. Palmer,* 16 U. S. 631 (4 L. Ed. 471). "It is a familiar rule that a thing may be within the letter of the statute, and yet not within the statute, because not within its spirit nor within the intention of its makers. This is not a substitution of the will of the judge for that of the legislator, for frequently words of general meaning are used in a statute, words broad enough to include the act in question, and yet a consideration of the whole legislation or of the circumstances surrounding its enactment or of the absurd results which follow from giving such broad meaning to the words makes it unreasonable to

believe that the Legislature intended to include the par-
ticular act." *Trinity v. United States,* 143 U. S. 457
(12 Sup. Ct. 511, 36 L. Ed. 226). "A thing which is
within the letter of a statute is not within the statute
unless it be within the intention of the makers." *Jackson
v. Collins,* 3 Cow. (N. Y.) 89. See, also, *Ryegate v.
Wardsboro,* 30 Vt. 746; *Murray v. Hobson,* 10 Colo. 66
(13 Pac. 921); *Commonwealth v. Kimball,* 24 Pick.
(Mass.) 366; *Whitney v. Whitney,* 14 Mass. 88; *Pierce
v. Emery,* 32 N. H. 508; *Austin v. State,* 22 Ind. App.
221 (53 N. W. 481). It is a fair deduction from these
authorities that the very absurdity to say nothing of the
essential injustice involved in punishing as criminal the
violation of a statute of the state which we as the court
of last resort in that state were then solemnly assuring
the people was unconstitutional and void, and not entitled
to their obedience, is sufficient reason for saying that the
Legislature could not have intended any such application
of its enactment. The road by which this result is reached
is not wholly unlike the one pursued in the opinion pre-
pared by Mr. Justice McClain. It differs, however, in
this somewhat material respect, in that he emphasizes the
lack of criminal intent upon the part of appellant in
doing the act, while I have emphasized the absence of
legislative intent to include such acts within the penalty
of the statute. The latter view appeals to me as being
sound, and it avoids the otherwise formidable objection
raised by Mr. Chief Justice Deemer that we can not make
the absence of criminal intent a controlling consideration
without creating confusion in our decisions, and unsettling
or weakening the authority of the precedents to which he re-
fers. The argument by analogy from the rule which
obtains where the accused is shown to be an insane person
or an irresponsible infant is hardly applicable for in such
cases crime is not imputed—not so much from the want
of criminal intent as from the incapacity of the accused

to know or appreciate the quality of the act with which he is charged. On the other hand, I can not agree with the concurring opinion by the Chief Justice in holding that a change in judicial interpretation of a statute becomes a part of the statute or that a change in such interpretation is the "same in effect as an amendment of the law by means of legislative enactment." Whatever may have been their practice in border-line cases, our courts have always been quick to deny the charge of magnifying their authority or indulging in judicial legislation, and I think we should carefully avoid any pronouncement which may give color to criticism of that character. The rule which sometimes obtains in civil actions involving contract rights would in my judgment have a very misleading application in criminal cases, for in the former the party is relieved from the effect of the change of decision not because the erroneous holding becomes a part of the law (though that expression is often used), but because the parties are presumed to have contracted with reference to such decision which is thereby made in effect a term or condition of the agreement itself.

I am also firmly persuaded that the constitutional inhibition of cruel and inhuman punishments is not available to the appellant in this case. To make it applicable, we must assume the guilt of the accused, but hold the punishment prescribed is objectionable because it is cruel, inhuman, or one out of all reasonable proportion to the nature and quality of the offense. But, assuming guilt, a punishment is not obnoxious to the constitutional provision merely because it is severe. Fine and imprisonment are substantially the only practicable penalties which the state can impose upon offenders, and, except in extreme cases showing gross abuse of such authority the courts will not, or at least ought not, assume to say that a statute imposing them is void. The penalty which the statute imposes for the offense charged against the appellant is

a fine of not less than $50 nor more than $100 for the
first offense, with alternative of imprisonment not exceed-
ing thirty days in case the fine be not paid. Code, sections
2382, 2383. Assuming that appellant was punishable at
all, and as I have said we must so assume before raising
the constitutional objection, it is to me inconceivable that
such punishment is excessive or cruel, or inhuman or un-
reasonable within the meaning of that provision. The
books will be searched in vain for a precedent to justify
that holding. To the contrary, see *State v. Teeters,* 97
Iowa, 458; *Martin v. Blattner,* 68 Iowa, 286; *State v.
Huff,* 76 Iowa, 204; *Fisher v. McDaniel,* 9 Wyo. 457
(64 Pac. 1056, 87 Am. St. Rep. 981); *Luton v. Palmer,*
69 Mich. 610 (37 N. W. 701); *Commonwealth v. Hitch-
ings,* 71 Mass. 482; *Blydenburgh v. Miles,* 39 Conn. 484;
*Commonwealth v. Murphy,* 165 Mass. 66 (42 N. E. 504,
30 L. R. A. 734, 52 Am. St. Rep. 496); *Ex parte Keeler,*
45 S. C. 537 (23 S. E. 865, 31 L. R. A. 678, 55 Am.
St. Rep. 785); *State v. Nelson,* 10 Idaho, 522 (79 Pac.
79, 67 L. R. A. 808, 109 Am. St. Rep. 226); *Ex parte
Swann,* 96 Mo. 44 (9 S. W. 10); *Pervear v. Massachu-
setts,* 72 U. S. 475 (18 L. Ed. 608); *McLaughlin v.
State,* 45 Ind. 328; *State v. Barnes,* 3 N. D. 319 (55
N. W. 883); *Harper v. Commonwealth,* 93 Ky. 290 (19
S. W. 737); *State v. DeLano,* 80 Wis. 259 (49 N. W.
808); *State v. Rodman,* 58 Minn. 393 (59 N. W. 1098).

In fact as I view it, there is but one tenable ground
on which we can interfere with the judgment of the trial
court in this case, and that is to say that the act with
which the defendant is charged, though within the letter
of the prohibition of the statute, is not within its purpose,
reason, or intent, and is therefore not punishable. On
that ground alone I would reverse.